MARTIN PINCUS MARKETING,
Plaintiff,

v.

SAWYER OF NAPA, INC., Defendant.

SAWYER OF NAPA, INC.,
Third–Party Plaintiff,

v.

Vincent MONE, Third–Party Defendant.

No. 89 Civ. 1230 (KTD).

United States District Court,
S.D. New York.

Sept. 12, 1991.

Shea & Gould (Robert J. Ward, of counsel), and Jacobson & Triggs (John F. Triggs, of counsel), New York City, for plaintiff.

Zukerman & Gore (Raymond A. Bragar, of counsel), New York City, for defendant and third-party plaintiff.

Camhy Karlinsky & Stein (Martin E. Karlinsky and Lawrence A. Steckman, of counsel), New York City, for third-party defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Martin Pincus Marketing ("MPM") commenced this diversity breach of contract action against defendant/third party plaintiff Sawyer of Napa, Inc. ("Sawyer"), seeking certain commission payments allegedly due and owing from 1988 and 1989 contracts. Sawyer commenced the third-party action against one of its former employees, Vincent Mone, as the person ultimately responsible for whatever amount of commissions might be due Pincus. A trial in this matter was conducted on June 11–13, 1991. The following constitutes my findings of fact and conclusions of law.

## STATEMENT OF FACTS

At all times relevant to this action Sawyer, a California-based company, sold shearling and leather coats and jackets. Sales to retail outlets were conducted through sales representatives. Although acting on Sawyer's behalf to sell its products to the retail market, sales representa-

tives were hired as independent contractors. Mone, Sawyer's national sales manager in 1987 and part of 1988, was responsible for hiring and supervising sales representatives for the company. Transcript ("Tr.") 8–9.

As the sole proprietor of MPM, Pincus was primarily in the business of selling women's apparel at the time and maintained his own showroom in New York City. Tr. 3. He contracted with Sawyer in March and then again in November of 1987 to be the exclusive sales representative for ladies outerwear, with MPM having the "exclusive sales agency rights to the Sawyer line of ladies' coats, jackets and skirts." Tr. 6, 67, and Stipulated Exh. 1. By the March and November contracts, the duration of Pincus' exclusive agency was established through 1988.

In addition to acting as Sawyer's sales manager, Mone conceived of and designed a leather jacket and coat line for men. Tr. 11. He developed this line for Sawyer in late 1987, although the company was primarily in the shearling business prior to that time. Contemporaneously, Sawyer was selling the men's leather jacket line, recut to fit women, its first efforts to develop a women's leather jacket line. Tr. 12. Although the line was limited, Pincus was expected to sell the women's line of leather coats as per explicit terms of contract.

On or about June 6, 1988, Mone had a conversation with Pincus, in which Mone represented his intent to leave Sawyer in order set up his own company. Mone's desire was to sell his own designs of ladies' leatherware. Tr. 51–52. At that time, Pincus expressed some interest in working for Mone. Tr. 52, 53. During July through August, Pincus and Mone continued to have further discussions about the possibility of Pincus' representing Mone's company, selling a ladies' leather line. Tr. 53–54. By August 1988, the two had determined certain basic terms upon which Pincus could represent Mone's new company— "Silverado Leather Co., Inc. ("Silverado")." Tr. 54. After Mone's departure from Sawyer, Paul Deutschman took over Mone's managerial position. Tr. 18.

On August 15, 1988, Pincus entered into a contract with Sawyer to last through 1989. That contract, in pertinent part, states that Pincus was to "act as [its] exclusive selling representative in the continental United States including Alaska for the Sawyer coat Division line of Ladies Coats." Stipulated Exh. 3; Tr. 88. The coat division included leathers as well as shearling products. That contract further provided that commissions were to be paid "in the amount of 10% on net dollar value of all merchandise shipped (less returns in any one month)." Stipulated Exh. 3. Also, "[o]rders accepted by Sawyer for this line shall be credited to the MPM account regardless of where the order is written or with whom it is placed, [and that] [n]o commission [was to be paid] on off price or close out sales unless negotiated in advance for each transaction," was provided for within that contract. Stipulated Exh. 3.

On August 18, 1988, Pincus was invited by Mone to meet, have drinks, and view some of the leather jackets that he had produced. After seeing the models, Pincus decided to represent Silverado, signing contract to represent it on September 1, 1988. Tr. 18, 55–56. Upon learning that Pincus was to represent Silverado in leathers, Sawyer's President and Chief Executive Officer Milton Dranow called Pincus to say that because Pincus undertook to sell a competitive line, "he was in a conflict of interest" and that "[Dranow] wanted the samples out of his [Pincus'] place [showroom] and [ ] didn't want him in any way to be representative of Sawyer merchandise." Tr. 163.

Dranow committed Sawyer to honoring the 1988 contract through to December 31, 1988, however, the Sawyer samples were removed from Pincus' showroom and Pincus was left to sell shearlings through Sawyer's printed literature alone. Tr. 26–29, 165–167. In addition, Sawyer contracted with Ressler Enterprises ("Ressler"), whereby Ressler was to act as Sawyer's exclusive ladies shearling coat representative during 1989. Both MPM and Sawyer

claim breaches of the 1988 and 1989 contracts. At the point of trial, Pincus was represented by Mone's counsel and Mone was paying the attorneys' fees for the action commenced by Pincus for commissions.

## DISCUSSION

Pincus now seeks certain commission payments or remuneration for sales that he procured after the Sawyer merchandise was removed from MPM's showroom, and for sales promoted by him during the 1988 contract. In addition, Pincus alleges that the 1989 contract was breached by Sawyer and that he is due all commissions that he could have made for that year. Sawyer counters by claiming that Pincus was paid all that was due him on the 1988 contract; that Sawyer respected the integrity of that contract up until December 31, 1988, that the 1989 contract was mutually rescinded, that purported damages on the 1989 contract are too speculative to merit; and, that, in any event, Pincus induced by fraud the signing of the 1989 contract and thus is not due any remuneration.

### I. *1988 Contract*

■ It is axiomatic that in New York, an exclusive agency creates an implied promise of the agent to use his good faith, best efforts to bring about the result sought by the agency. *Wood v. Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), *reh. denied*, 222 N.Y. 643, 118 N.E. 1082 (1918); *Stendig, Inc. v. Thom Rock Realty Co.*, 163 A.D.2d 46, 558 N.Y.S.2d 917 (1st Dep't 1990). Similarly, implicit in all contracts entered between Sawyer and Pincus was that Pincus would employ his best efforts to sell Sawyer products. This precludes any possibility for the sale of goods competing with the Sawyer line. Thus Pincus was forbidden by his exclusive agency from entering into contracts in conflict with Sawyer. Mone's goods were obviously competing with Sawyer's products.

■ Pincus maintains that Mone's leather line was not in competition with Sawyer's. However, Pincus was selling for Silverado merchandise that Mone developed while in Sawyer's employ. Tr. 11. Specifically, Mone developed a line of men's leathers for Sawyer. Those leathers were reproportioned to fit women. Pincus was employed to and did sell these unisex designs in the women's apparel market. Tr. 12, 13, 140. However, because Sawyer recut the mens' jackets to fit women, Pincus asserts that such does not constitute a line of women's wear products.

Pincus' position that Sawyer was never in the business of selling ladies leathers is untenable. Although Sawyer was selling unisex leathers, sales procured by Pincus of unisex leathers were credited him and the commissions paid him were delineated as ladies leatherware sales. Moreover, Sawyer's efforts to sell a ladies leather line arose prior to Mone's abandonment. Apparently, Mone took the line that he produced for Sawyer, while in its employ, to Silverado, thus undermining Sawyer's efforts to enter the women's market for leathers. Pincus then signed on with Silverado in direct competition with Sawyer.

Pincus maintains, however, that his taking on a competing line of coats is not inconsistent with his duties to Sawyer. I disagree. A manufacturer's representative could take on a competing line only where the contract is not for an exclusive agency. *See Raycarr Sales Corp. v. Herman Rynveld's Son Corp.*, 147 N.Y.S.2d 425 (Sup.Ct. N.Y.Co.1955) *rev'd on other grounds*, 1 A.D.2d 952, 150 N.Y.S.2d 619 (1st Dep't 1956). Pincus relied on *Raycarr* for the proposition that he could well serve Sawyer even while representing Silverado. However, Pincus overlooks the fact that his was an exclusive agency relationship with Sawyer. Clearly, it was improper for Pincus as Sawyer's representative to take on a competing line of clothing thus violating his good faith, best efforts obligation to the manufacturer.

■ Finally, Pincus seeks damages under the 1988 contract for sales procured by Pincus and not credited him after his confrontation with Dranow at which time he ordered all Sawyer merchandise be removed from Pincus' showroom. These damages represent Pincus' estimate of ad-

ditional sales beyond all those sales booked, without any supporting evidence that the sales could have been made or, that Sawyer had the capacity to manufacture the product necessary to fill the sales orders if they could have been obtained. Indeed, such estimations of damages are purely speculative.

## II. *1989 Contract*

■ A contract is unenforceable if it was induced by wrongful non-disclosure. *Westbury Small Business Corp. v. Ballarine*, 128 Misc.2d 469, 489 N.Y.S.2d 815, 821–22 (Sup.Ct. Nassau County 1985), aff'd, 125 A.D.2d 462, 509 N.Y.S.2d 569 (2d Dep't 1986). Moreover, "[f]raud may consist of 'the intentional suppression of the truth'". *Stevenson Equipment, Inc. v. Chemig Constr. Corp.*, 170 A.D.2d 769, 565 N.Y.S.2d 318, 320 (3d Dep't 1991) (citations omitted). "Under New York law, omissions of material fact may rise to a level constituting fraud and serve as a basis for action for money damages." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Assoc.*, 731 F.2d 112, 123 (2d Cir.1984). During negotiation of a business transaction, a duty to disclose arises where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.* (citations omitted). Likewise, silence may form the basis of actionable fraud where there is a duty to speak. *Westbury Small Business Corp. v. Ballarine*, 489 N.Y.S.2d at 821 (citing *Donovan v. Aeolian Co.*, 270 N.Y. 267, 200 N.E. 815 (1936)).

■ In the case at bar Pincus had a duty to affirmatively disclose his intent to sell Silverado leathers. Instead, Pincus evaded disclosure of his intent to sell Mone's product while conducting negotiations with Sawyer on the 1989 contract. Specifically, just prior to signing the 1989 contract when Pincus was asked directly whether he was negotiating with Mone to sell his leathers, Pincus replied: "I did not answer yes or no." Tr. 60–62. Pincus' fraudulent conduct is further evidenced in the comparison between the 1988 and 1989 contracts. With respect to describing Sawyer goods in the 1988 contract, Pincus named himself the exclusive Sawyer agent for "Sawyer Coat Division, line of ladies coats, jackets and skirts." Stipulated Exh. 2. In 1989, Pincus changed the terms, naming himself the agent solely for Sawyer coat division line of ladies coats. Stipulated Exh. 3. Relying on the fact that he omitted reference to "jackets and skirts" in that contract, Pincus claims that he had no further duty beyond selling Sawyer's shearlings and no further duty to disclose his intent to sell a competing line of leathers.

■ A failure by Pincus to affirmatively state that he would no longer sell Sawyer's leathers constitutes a fraud in the inducement of contract. Silently removing certain terms from the 1989 contract is no substitute for an affirmative statement. Pincus' contention that Sawyer had no ladies leather line, based on the fact that the line was merely in its germinating stages and developed by recutting and/or hemming the men's leather, is of no moment. By intentionally choosing to evade direct questions regarding new loyalty to Silverado, Pincus omitted to disclose facts integral to his obligation under contract with Sawyer. This dishonesty by omission cannot be condoned here. The 1989 contract is a nullity and void. Furthermore, Pincus has produced nothing more to base his claim for commissions under the 1989 contract and I find that Sawyer's termination of the 1989 was proper.

## III. *Fee Shifting*

Under New York Labor Law, "an award of reasonable attorney's fees, court costs, and disbursements" must be awarded to the prevailing party in a civil action for damages. N.Y. Labor L. § 191–c subd. 3 (McKinney Supp.1991). This statute had not become effective until after the 1988 contract was entered, and is thus applicable only to the 1989 contract. The evidence at trial established that Pincus' claims with respect to the 1989 contract are without merit. As the prevailing party, therefore, Sawyer "shall be entitled to reasonable at-

torney's fees, court costs, and disbursements." *Id.*

For the foregoing reasons, Pincus' claims for various commissions are deemed meritless and the complaint is dismissed in its entirety. This matter is hereby referred to Magistrate Judge Katz to determine the amount of fees, costs, and disbursements to be awarded Sawyer, including the apportionment of attorney time between the two contracts that are the subject of this litigation.

SO ORDERED.