OPINION OF THE COURT
Stanley Parness, J.
Plaintiffs move for summary judgment and defendants cross-move to dismiss. The suit arises from two separate purchases by plaintiffs of ownership interests in two breeding bulls. It is stated without dispute that defendants, Transcontinental Land Cattle Corp. (TLC), acted in these transactions as agents and/or promoters for the seller of each of such interests. Defendant, Agriland Livestock Management Associates Inc. (ALLMA), has not appeared in this action.
In the first transaction, by agreement of August 5, 1978, plaintiff, Malcolm Delacorte, purchased a one-third interest in a Black Angus bull, “Dunipace Prospector”, for $15,000 and in the second transaction of March 31, 1979, his wife, plaintiff, Stella Delacorte, purchased a two-thirds interest in a Brahman bull, “BBCC Norris 2-6”, for $10,000. By letter of October 2, 1978, with regard to the first transaction, defendants TLC and ALLMA engaged to “guarantee”: “to purchase said interest in Prospector from Malcolm Delacorte on October 1, 1980 for the higher of (a) $10,000, (b) then current market value.”
A similar guarantee to purchase that interest acquired by Stella Delacorte in the second transaction is contained in the letter of March 27,1979 which states in part that the defendants TLC and ALLMA will “guarantee”:
*708 “(a) to repurchase from you during May 1981, one-half of your two-thirds interest and possession in BBCC Norris for the amount of $5,000 and
“(b) to repurchase at your option, after May 1982, your remaining one-third interest and possession for the higher of either * * * fair market value or * * * $5,000 during May, 1982 for a price that is reduced by $60 per month for each month owned by you after June 1, 1982.”
Thereafter, defendant apparently had some difficulty in marketing the bull and did not meet the repurchase dates set forth in its original agreements.
To reassure plaintiff, defendant Dick Leys, as an officer on behalf of TLC and ALLMA, and also “personally” in separate letters to each plaintiff dated September 1,1981, reaffirmed that they would repurchase by certain specified dates, Malcolm Delacorte’s interests for the sum of $13,000 and Stella Delacorte’s interests for the total sum of $10,000.
The instant action arises out of defendants’ failure to repurchase as allegedly agreed. Specifically, plaintiffs in the first and second causes of action allege a breach of contract by defendants, TLC and ALLMA, in their refusal to repurchase pursuant to the 1978 and 1979 agreements, and breach by defendants, Leys and TLC, of their follow-up agreements of September 1, 1981.
The third and fourth causes of action seek rescission of the contracts of purchase and/or damages based on defendants’ alleged “fraudulent” misrepresentations in inducing plaintiffs’ purchases.
Defendants, TLC and Leys, oppose plaintiffs’ present motion for summary judgment and cross-move for dismissal.
Initially, defendants, Leys and TLC, dispute liability as to the repurchase guarantees of September 1981 claiming lack of consideration to support such promises, while plaintiffs contend that their forbearance to institute litigation to enforce the underlying agreements of October 2, 1978 and March 27, 1979 provides consideration. Plaintiffs allege that such consideration is evidenced from the opening statements in the two September 1, 1981 agreements, which provide:
“I want to thank you for your patience with respect to our delay in finding a suitable buyer at the price you would like on your bull-Dunipace Prospector as per our letter agreement of October 2nd” and
“I want to thank you for your patience with respect to our delay in finding a suitable buyer for the one-half of your interest *709 in BBCC Norris due to be sold this year as per our letter agreement of March 27, 1979”.
While legal forbearance might have been exercised by plaintiffs, defendants correctly state that the quoted words do not clearly reflect recognition by defendants that such forbearance to sue occurred. That issue remains unresolved. It is, however, not necessary to establish forbearance as consideration, for the agreements set forth an unequivocal promise to pay a sum certain, at a date certain and recite the prior agreements of 1978 and 1979 as consideration for their promises to repurchase. These provisions meet the requirements of General Obligations Law § 5-1105, which provides that promises do not lose their validity on the ground that consideration for the promise is past or executed, if the consideration is expressed, is in writing and signed by the promisor. (Sarama v John Mee, Inc., 102 Misc 2d 132; Citibank Natl. Assn. v London, 526 F Supp 793.) The obligation to repurchase set forth in the 1978 and 1979 agreements was recognized by Leys and TLC as consideration for their 1981 promises. No other defense has been presented and the promises to repurchase remain unperformed. Judgment for plaintiffs for the payments as promised would thus be warranted.
However, defendants, Leys and TLC, in further defense to judgment, alternatively claim the right of full setoff against such obligations to the extent of the full tax benefits realized by each plaintiff from the ownership of their respective bulls. These benefits are alleged to be $15,800 cash income, $18,750 depreciation and investment tax credits, in all totaling net tax benefits of $23,000, which sum allegedly exceeds the total of the plaintiffs’ combined claims under the defendants’ repurchase agreements, thereby negating any right to damages in the first and third causes of action.
There is no question that the contemplated tax benefits played no small part in inducing plaintiffs’ investments in cattle breeding. This follows from the very dynamics of high-risk investments which would lose much of their marketable attractiveness without the expectation of tax deductions from the investor’s current and future income.
The courts have recognized this contemplated tax write-off as part of the benefits of such investments. Thus, in Salcer v Envicon Equities Corp. (744 F2d 935 [2d Cir, Sept. 19,1984]) the court sustained the right to setoff of the plaintiffs’ tax benefits in an action for damages for the fraudulent sale of partnership interests in real estate. Said the court (p 940): “the intervening *710 tax benefits to the partner represent an important tangible economic advantage expected to be derived * * * regardless [of] whether the venture eventually operates at a profit.” In seeking rescission of such agreements, a plaintiff must therefore necessarily reduce his claim to the extent of the tax benefits realized from the transaction.
This holding is consistent with application of the “out-rofpocket” rule of determination of fraud damages which, “looks to the loss which the plaintiff has suffered in the transaction, and gives him the difference between the value of what he has parted with and the value of what he has received. If what he received was worth what he paid for it, he has not been damaged, and there can be no recovery.” (Prosser and Keeton, Torts, at 767 [5th ed, 1984]; Reno v Bull, 226 NY 546, rearg denied 227 NY 591.)
While tax benefits may mitigate fraud damages, they would have no applicability to plaintiffs’ first two causes of action for breach of defendants’ promises to buy back plaintiffs’ interests. Unlike fraud, where the measure of damage is the loss of value of the bargain, plaintiffs’ contract actions seek payment of the specific sums promised by defendants in the repurchase agreement.
The promise made by the cross moving defendants in each of the September 1, 1981 agreements is a direct one to pay a sum certain on a stated date, which concededly has not been performed. It is clear from the text of these agreements that they neither provide, expressly nor by implication, for the setoff of tax benefits which may inure to plaintiffs as a consequence of the purchases made. Such references to tax credits and deductions as do appear herein are set forth incidentally and are merely informational. Under no reasonable interpretation thereof do they modify, diminish or mitigate the defendants’ obligations to repurchase for the sums as promised.
Accordingly, judgment is granted against the defendants, Leys and TLC, in the sum of $13,000 on the claim of Malcolm Delacorte and for $10,000 on the claim of Stella Delacorte plus interest.
Plaintiffs’ third and fourth causes of action are in fraud and seek rescission and/or damages. In essence, plaintiff alleges that defendants’ guarantees were fraudulent and that “at the time such representations were made defendants knew such representation to be false.” Fraud may be predicated on the promises made with an intention not to perform them, i.e., promises with no intention of performance. (24 NY Jur, Fraud and Deceit, *711 §§ 51, 55; Adams v Clark, 239 NY 403.) It thus is recognized that an intention not to perform existing at the time of making the promise may be regarded as fraudulent. This is so because such false promise falsely represents the state of the promisor’s mind (Deyo v Hudson, 225 NY 602). That is the essence of deceit. But “it does not follow that every broken promise acted upon is actionable [in fraud]. Mere promissory statements as to what will be done in the future are not actionable.” (Adams v Clark, supra, p 410.) Nor does the failure to perform a contractual promise infer that fraud was at its root even if the promisor has no excuse for his nonperformance (24 NY Jur, Fraud and Deceit, §57).
It is clear that other than for defendants’ nonperformance, all that plaintiffs have presented in the complaint and motion papers are unsupported general allegations of a prior fraudulent intent not to honor their repurchase agreements. No other facts or circumstances have been alleged to support this claim. Plaintiffs have thus failed to meet the burden required to resist defendants’ cross motion as it is addressed to the fraud actions.
Accordingly, summary judgment is granted to cross movants with respect to the third and fourth causes of action and to plaintiffs, as stated, on behalf of the first and second causes of action. The application for leave to enter a judgment by default against the nonappearing defendant, ALLMA, is denied in view of the dispositions made.