OPINION OF THE COURT
Arthur D. Spatt, J.
This nonjury trial involves an action to recover on a promissory note in the face amount of $30,000 executed by the defendant Robert Ballarine on June 13, 1983, in connection with his entering into a franchise with the Power Test Petroleum Distributors, Inc. (Power Test), which corporation is not a party to this action. The money that was borrowed from plaintiff West-bury Small Business Corporation (Westbury) was used to finance this business venture with Power Test. The franchise concerned the operation by defendant of a gas station located at 315 Merrick Road, Amityville, New York.
The action was started by a notice of motion for summary judgment in lieu of complaint (CPLR 3213). By order dated July 6, 1984 (Roncallo, J.), plaintiff’s motion for summary judgment and the cross motion by defendant were denied on the ground that triable issues of fact were presented.
*470 In the affidavit by defendant in opposition to plaintiff’s motion for summary judgment dated May 23, 1984, various defenses were alleged in general terms. The affidavits in support and in opposition to the motions for summary judgment in this case are the pleadings, since there is no complaint or answer. In essence, defendant alleges that fraudulent misrepresentations were made by Power Test which induced him to enter into this franchise and further induced him into making the loan which is the subject matter of this lawsuit.
In addition, defendant alleges that Power Test failed to comply with the provisions of General Business Law § 199-b which provides, in pertinent part, as follows:
“§ 199-b. Disclosures to prospective dealers
“A distributor shall disclose in writing to any prospective dealer the following information, before any franchise is entered into:
“1. The gallonage volume history, if any, of the location under negotiation for and during the three year period immediately past or for the entire period which the location has been supplied by the distributor, whichever is shorter.
“2. The name and last known address of the previous dealer or dealers for the last three years, or for and during the entire period which the location has been supplied by the distributor, whichever is shorter, and the reason or reasons for the termination of each dealer franchise.”
It is noted that this statute contains no provision concerning remedies or penalties for its breach. Defendant contends that Power Test failed to disclose the gallonage history of the service station, the names and addresses of the previous dealers and the reason for termination by those dealer franchises.
FINDINGS OF FACT
The plaintiff Westbury Small Business Corporation is a subsidiary of Power Test. Westbury and Power Test have mutual officers. Both corporations have their office in the same building at 175 Sunnyside Boulevard, Plainview, New York; the president of Westbury is also the president of Power Test; the treasurer is the same; and Herbert Wechsler, who was the sole witness on behalf of Westbury, is a vice-president of both corporations. Westbury has no salaried employees and operates in the Power Test office by way of Power Test employees.
Westbury is apparently the financing arm of Power Test and lends money to prospective gas station operators who desire to purchase franchises from Power Test. Prospective franchisees *471 are afforded an opportunity to borrow money directly from Westbury with less difficulty than borrowing from a bank. In this case, while the $30,000 loan made to defendant was uncollateralized, substantial security deposits were retained by Power Test. In this regard, Power Test retained $3,500 as security for the rent under the lease and $8,000 as a credit deposit to secure the payments of gasoline by the dealer to Power Test. Although the loan was in the face amount of $30,000, the sum of $11,500 was retained by Power Test as security for the lease and for payment of gasoline. Thus, the defendant dealer had the use of only $18,500 from the proceeds of the loan.
The defendant concedes that he signed a promissory note dated June 13, 1983, in the sum of $30,000 and does not offer any evidence in opposition to plaintiff’s contention that the sum of $26,748.51 is presently due on this loan.[1] Were it not for the defenses interposed by the defendant, judgment would be rendered in favor of the plaintiff. The triable issues in this case relate to the defenses of fraud and failure to disclose raised by the defendant.
Herbert Wechsler,, vice-president of both Westbury and Power Test, testified with regard to the execution of the promissory note and the moneys due, but was unfamiliar with the preliminary negotiations with the defendant. In fact, no witness was called by the plaintiff who had personal knowledge of the negotiations prior to and at the time of the entering into of the note and agreements herein.
The court finds that Westbury and Power Test had actual knowledge of the statutory requirement for a disclosure statement. Mr. Wechsler conceded that, “The State of New York required such disclosure.” Further, the Westbury checklist setting forth the papers that have to be signed in this kind of transaction included a provision for the execution of a dealer disclosure statement.
After subpoenas were served on Westbury and/or Power Test, or both corporations, a dealer disclosure form was found in a work file and produced in court. This is a significant item of evidence. The printed form is entitled “Dealer Disclosure Form”, contains the account number and name of defendant’s service station, is dated June 14, 1983, and is signed by the defendant. The form contains a space at the top of the sheet for “Annual Gallonage” with spaces for three years and categories of premium, regular and no-lead gasolines. These gallonage spaces are blank.
*472 Immediately underneath the “annual gallonage” portion of the form disclosure statement is an area entitled “Name and Address of Previous Dealer”, and under that section a space for “Reason for Termination”. Similarly, these spaces are all blank.
Mr. Wechsler testified that the person involved with the negotiations for this dealership with defendant and the execution of the papers for the dealership and the loan was one Debra Marchant. Although Ms. Marchant is still employed by West-bury-Power Test, she was not produced as a witness. The court finds that Debra Marchant was in a position to give material relevant evidence on the crucial factual issues of the alleged false representations as to prior gallonage and whether a dealer disclosure statement was given to the defendant. No explanation for failing to call such a vital witness was offered by Westbury. The court, therefore, infers that Ms. Marchant’s testimony would not contradict defendant’s version of these occurrences; would not support Westbury’s positions; and the court draws a strong inference against Westbury with regard to said evidence. (See, Grey v United Leasing, 91 AD2d 932 [1st Dept 1983]; Turner Press v Gould, 76 AD2d 906 [2d Dept 1980].)
The court finds that the defendant established that Power Test failed to disclose to him in writing the gallonage history of the station for the three-year period prior to the defendant’s entering into the franchise. The court further finds that the defendant established that Power Test failed to furnish to him the names and last known addresses of the previous dealers and the reasons for termination during said time period. Thus, Power Test violated the terms of General Business Law § 199-b (1) and (2).
While the defendant testified that he was shown “a part of a computer printout” with 6 to 9 months’ gallonage figures showing in excess of 100,000 gallons per month, this did not satisfy the mandates of the above-cited statute. (See, for example, Westbury Small Business Corp. v Conlon, Spec Term, Sup Ct, Nassau County, Nov. 10, 1983, index No. 13761/83, Stark, J.)[2]
At the closing of this gas station franchise transaction, the court finds that neither Westbury nor Power Test furnished copies of the closing papers to the defendant, except for a copy of the lease and the profit and loss statement. The defendant was not given a copy of the promissory note he executed which is the basis for this lawsuit or the dealer contract.
*473 Also, the defendant was not given a copy of the partially completed disclosure form, or any of the other papers executed by him and Power Test at the closing. Defendant was unrepresented by counsel and had not consulted an attorney. He was relatively inexperienced in business and a total neophyte in the gas station business and relied upon the Power Test people with regard to the mechanics of the finances and the documents required to close the transaction.
The court finds that, prior to the signing of the note and the closing papers, defendant inquired about the prior gallonage figures. Ms. Marchant produced for his viewing a partial computer printout which showed prior gallonage figures for this gas station for an unstated period of 6 to 9 months. With the exception of one month, the prior gallonage figures shown to defendant were in excess of 100,000 gallons per month, averaging 115,000 to 130,000 gallons per month. After viewing these gallonage figures and without the benefit of any opportunity to speak to any prior owners or receive physical possession of the three-year prior gallonage picture, the defendant borrowed the $30,000 and signed the note and the other voluminous closing papers.[3]
Defendant commenced doing business in the gas station in June 1983 and continued in business until January 1984. His average gallonage during that time was in the high 60,000’s and low 70,000’s. In order to “break even”, defendant had to sell at least 80,000 gallons per month, a figure never attained during his seven-month operation of the station. At that low level of gallonage and with the cost of gas and overhead, defendant was unable to meet the expenses of the business. Although defendant and his wife and their employees kept the gas station open seven days a week for 18 to 24 hours a day, they could not continue the business, then operating at a loss, and the gas station closed in January 1984.
Further, defendant’s prices for gas, which were dictated by the cost price to Power Test, were not competitive. Two nearby gas stations had lower prices, and he steadily lost customers to those stations. Several promotional items promised to him by Power Test were not given to him or were not made available in time for him to survive in his business. Defendant’s requests to Mr. Wechsler for financial assistance, either by way of reducing the cost of the gas or furnishing promotional material, went largely unheeded.
*474 Defendant had been told nothing about the immediate prior owner except that defendant was told he could not get in touch with him. After the defendant began operating the business, he discovered that the prior owner of the station had gone out of business owing money to a number of creditors. Further, he found out that the prior owner had insulted customers and “chased them off the lot”, and he learned that the residents in the area did not like him. This lack of good will was, of course, detrimental to defendant’s attempt to succeed in this station, especially in view of the nearby competing gas stations that sold gas at a lower price.
Ultimately, the defendant was told that the prior owner had left the country. The court finds that, if prior to defendant’s purchase, he had been informed of the troubling facts involving the prior owner, the defendant would have made more extensive inquiries about the business, the customers and the lack of good will engendered by the prior owner. This failure to disclose on the part of Power Test, in violation of the General Business Law, resulted in preventing defendant from making an informed decision as to whether to borrow $30,000 to purchase this gas station franchise.
At the trial, the defendant’s defenses consisted of two categories of fraud. First, the defendant alleged that there was an express affirmative fraudulent misrepresentation. This misrepresentation was made by Ms. Marchant when she exhibited to defendant a partial computer printout containing prior gallonage figures showing a usage for 6 to 9 months of in excess of 100.000 gallons per month with the exception of one month. The gallonage figures shown to defendant averaged 115,000 to 130.000 gallons per month for the 6- to 9-month period. Second, the defendant contended that the failure to make the statutory disclosures mandated by General Business Law § 199-b constituted fraud by “silence”.
At the conclusion of the trial, the court questioned counsel for the defendant as to the affirmative fraudulent misrepresentations. In particular, the court asked said counsel whether there was any evidence that the prior gallonage figures were false, and counsel candidly responded in the negative. However, a close review of the documentary evidence reveals that, notwithstanding counsel’s admission, there is believable evidence in this case as to the falsity of these gallonage figures. Such evidence was in the form of a record entitled “Monthly Gallonage Report Gasoline”, which record was subponaed by defendant and produced by Westbury at the trial. This record, *475 previously unrevealed to defendant, disclosed the monthly gallonage figures for the subject gas station for the years 1980,1981, 1982 and 1983. During this period, the gallonage figures were substantially lower than 100,000 gallons per month, except during a three-month period in September, October and November, 1983. Although plaintiff contended that the gas station was rebuilt and modernized in June 1982 so as to produce additional gasoline sales, the court notes that in January, February, March, April, May and June 1982, the actual gallonage figures were all less than 100,000 gallons per month.
The failure to disclose these low monthly gallonage figures to defendant was compounded by Power Test’s failure to furnish defendant with the names and addresses of the prior dealers. Thus, not only did Power Test affirmatively misrepresent the monthly gallonage figures, but it deprived defendant of the opportunity to ascertain the true gallonage figures by inquiry of the prior owners, by its failure to disclose the names and addresses of the prior owners in violation of the General Business Law.
THE ISSUES
As stated above, the defendant’s defense of fraud is based upon two theories. First, he contends that there was a fraudulent misrepresentation of the prior gallonage figures. The second theory raises the issue of the effect of Power Test’s violation of the written disclosure requirements of General Business Law § 199-b (1) and (2). Finally, in the event this court determines that defendant has established valid defenses sounding in fraud against Power Test, what is the effect of these defenses with regard to the promissory note to Westbury, a separate corporation?
CONCLUSIONS
The elements of a cause of action or defense sounding in fraud are: (1) a misrepresentation of an existing fact; (2) which misrepresentation was false and known to be false; (3) which misrepresentation was made for the purpose of inducing the other party to rely upon it; (4) the other party justifiably did so rely upon said misrepresentation; and (5) such misrepresentation resulted in injury. (Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403 [1958]; Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc., 88 AD2d 461 [2d Dept 1982].)
In a defense based on fraud, defendant must make out his case by clear and convincing evidence. (Simcuski v Saeli, 44 NY2d 442 [1978]; Rudman v Cowles Communications, 30 NY2d 1 [1972].)
*476 In this case, the defendant has established, by clear and convincing proof, that Power Test, by its employee Debra Mar-chant, induced him to enter into this gas station franchise by misrepresenting the gallonage history of the station. Defendant asked Ms. Marchant “how the station had done previously” and about the prior gallonage history. In addition to generalities that the station was a “profitable” one and “sold very high volume in the past”, she showed defendant part of a computer printout with 6 to 9 months’ prior gallonage figures averaging 115,000 to 130,000 gallons per month.
That these representations as to the prior gallonage were false is clearly established by a review of the actual gallonage figures finally produced by Power Test after subpoena, during trial.
Further, the court finds that these misrepresentations by Power Test were made to induce the defendant to purchase the station; that defendant obviously relied upon the only data fleetingly provided him concerning the prior gallonage; that the actual gallonage figures were intentionally hidden from him; and that injury resulted from such false representation, namely, the expenditure of moneys and countless hours of labor on the part of the defendant and his family.
In sum, the defendant has established, by clear and convincing evidence, his defense of fraud in the inducement by way of express affirmative misrepresentation as to the prior monthly gallonage usage at the station.
The court now turns to the legal consequences of the failure by plaintiff or Power Test to provide the information required by General Business Law § 199-b.
It is one of the fundamental tenets of Anglo-American law that a “fraud may be committed by a suppression of the truth as well as by the suggestion of falsehood.” (24 NY Jur, Fraud & Deceit, § 103.) Silence may form the basis of actionable fraud where there is a duty to speak. (Donovan v Aeolian Co., 270 NY 267.)
Further, the failure to provide defendant with the mandated information resulted in an active concealment. The rule on concealment was stated by Justice Titone (then a Supreme Court Trial Justice) in Haberman v Greenspan (82 Misc 2d 263, 265 [Sup Ct, Richmond County 1975]), as follows: “The rule that nondisclosure of facts normally does not constitute fraud, does not apply where there is an active concealment of facts; and such concealment is a fraud. ‘Active concealment’ has been defined as either a representation good as far as it goes, but accompanied with such a suppression of facts as makes it convey a misleading *477 impression, or an attempt by one party to draw the other’s attention from a fact or to cover it from view. In the first case, the nondisclosure has the effect of either impliedly representing that the fact concealed does not exist or of rendering the facts disclosed absolutely false; in the second case, the conduct of the party outside of an actual representation, is a fraud on the other”.
In the case at bar, there was a combination of a false representation of the gallonage figures coupled with a suppression of the facts required by statute to be revealed.
Furthermore, there was a statutory duty to speak on the part of Power Test. In the face of this statutory duty to reveal the gallonage history for a three-year period and the names and addresses of the previous dealers and their reasons for termination, there was not only a deliberate nondisclosure of these facts the Legislature deemed material, but also an intentional disclosure of false facts which served to further deceive the defendant.
The court finds that all the necessary elements of fraud with regard to the failure to disclose the information required by General Business Law § 199-b were established by clear and convincing proof. The failure to provide this information was intentional and deliberate; the information was withheld in order to deceive the defendant and induce him to purchase the franchise under false assumptions of the gallonage and prior dealer history; there was reliance by defendant on a false state of facts due to the absence of the required crucial information; and the defendant was damaged thereby.
It is likely — indeed certain — that the defendant would have declined to purchase the franchise were he armed with the information required by General Business Law § 199-b. Even disregarding the false gallonage history provided, it is most improbable that the defendant would purchase the franchise had he known of the dismal history of the station with respect to its previous owners. In addition, the failure to provide the defendant with the gallonage history prevented him from determining whether the figures disclosed to him in the computer printout were accurate.
General Business Law § 199-a et seq. was an attempt to define the rights and duties of the parties to franchise agreements for the sale and distribution of motor fuels. The Legislature found a gross inequality in bargaining power between distributors and retailers in which the terms and conditions of franchise arrangements were dictated by the distributors.[4] One of the key provi *478 sions of the legislation is the requirement that the distributor provide the retailer with “written disclosure of significant facts concerning the franchise being offered to a prospective dealer” (emphasis supplied). (See, memorandum of Assemblyman Daniel B. Walsh to L 1975, ch 265, 1975 NY Legis Ann, at 99.)
Plaintiff contends that, even if the court were to find a violation by Power Test of General Business Law § 199-b by a failure to supply the required facts, this court cannot vitiate the promissory note or apply the ordinary rules of fraud because the statute itself does not contain an express remedy for violation thereof. This contention is rejected by the court. In light of the Legislature’s finding that the requisite information was important enough to the prospective retailer that a law was needed to insure written compliance, this court must hold that the failure to furnish this information can be a predicate for the defense of fraud.
Indeed, the facts of this case and others like it involving Westbury and Power Test dramatically confirm the reasoning of the Legislature to deem this information “significant” and require written disclosure. It is absurd to believe that the Legislature went out of its way to create this affirmative duty while, at the same time, proscribing its use in a fraud action. Quite the contrary would appear to be the legislative intent. Certainly, it was not the legislative intent to dilute the rights of the retailer to seek remedy for fraudulent acts by the distributor.
Thus, there was silence by Power Test in the face of its statutory duty to speak, and the defendant relied upon this silence and was thereby induced into entering into this arrangement and executing the subject promissory note.
This same failure to disclose by Power Test, pursuant to General Business Law § 199-b, in a situation involving a loan by Westbury, was the subject of a similar action in this court. In Westbury Small Business Corp. v Giglio (NYLJ, Apr. 8, 1985, p 14, col 6 [Sup Ct, Nassau County]), Justice Harwood ruled (p 15, col 1) that certain misrepresentations by Power Test “coupled with its failure to make written disclosure of its gallon-age history for the previous three years and its total non-disclosure of its dealership history for that period vitiates not only the document on which plaintiff sues [a promissory note as in this case], but all other documents constituting the franchising agreement.” This court concurs in the opinion of Justice Harwood with regard to the effect of a violation of the statute.
*479 Finally, the fact that Westbury is the assignee of Power Test and the alleged present holder of the note, while the employees of Power Test perpetrated the fraudulent conduct, does not prevent the court from dismissing this action by Westbury on the promissory note. In the first instance, Power Test is the named promisee in the note. Secondly, Westbury does not claim holder in due course status. (See, Uniform Commercial Code § 3-302 [1] [c].) Thus, any defenses to an action by Power Test, the named payee, are good against Westbury (Magi Communications v Jac-Lu Assoc., 65 AD2d 727 [1st Dept 1978]).
Even if the court accepts the plaintiff’s contention that the Power Test name was inserted in the note by error, there is no' credible evidence as to the date the note was assigned by Westbury to Power Test. There is no doubt that the note was assigned to Westbury with full knowledge by their mutual officer of all of the infirmities in this transaction. Further, the court finds that the two corporations acted as one. The same factual situation is present in this case as in Westbury Small Business Corp. v Giglio (supra, p 15, col 1) wherein it was stated as follows: “For purposes of the ultimate disposition of this case, it is of no consequence that the note may not have been assigned or endorsed over to plaintiff until after commencement of litigation: the money lent to Giglio was disbursed through an account maintained in plaintiff’s name, and plaintiff does not claim to be a holder in due course. (See UCC § 3-302.) Moreover, although Wechsler testified that the two corporations are not ‘alter egos’ of each other, the officers and employees of the corporations are virtually identical and there is no indication that plaintiff financed dealerships for any distributor other than Power Test. It is thus clear that the two corporations are arms of each other, and it may be that their primary goal is not, as Giglio apparently thought, the sale and distribution of gasoline.”
Not only are Westbury and Power Test virtually identical in composition and “arms of each other”, but the promissory note which is the subject of this lawsuit was executed by defendant as part and parcel of the single franchise purchase. (See, for example, Fopeco, Inc. v General Coatings Technologies, 107 AD2d 609 [1st Dept 1985]; Ssangyong [U.S.A.] Inc. v Sung Ae Yoo, 88 AD2d 572 [1st Dept 1982].)
It is the rule, generally, that separate contracts relating to the same subject matter and executed simultaneously by the same parties may be construed as part of one agreement (Matter of Rosmarin, 107 AD2d 689 [2d Dept 1985; Williams v Mobil Oil Corp., 83 AD2d 434 [2d Dept 1981]). The intent of Westbury, *480 Power Test and the defendant, the parties to the negotiation, was that the purchase of the franchise, the loan and the many executed documents including the promissory note were part of one single transaction, which would have not been assented to by defendant in the absence of the misrepresentations and failure to disclose previously discussed in this decision. Therefore, the fraud in this case by Power Test vitiates the promissory note to Power Test and assigned to its identical copartner.
The other defenses raised by the defendant with respect to the plaintiff’s failure to provide certain promotional items and other matters concerning the plaintiff’s alleged failure to live up to other ancillary agreements are not viable and are dismissed.
In this case, the defense of fraud in the inducement stands as a complete bar to recovery by the plaintiff upon the promissory note. Therefore, plaintiff’s action on the promissory note in the face amount of $30,000 dated June 13, 1983, and for counsel fees, commenced by a motion for summary judgment in lieu of complaint, is dismissed.

. At this time, the court does not consider certain credits allegedly due to defendant from Power Test.

. This same evidence is crucial to the defendant’s defense of affirmative express fraudulent misrepresentation but is insufficient to comply with the statutory mandate.

. The materiality of the gallonage history in a station that’s sole function is to sell gas is obvious.

. The note, contracts and other documents signed by defendant were contracts of adhesion and should be narrowly construed against Power Test *478 and Westbury, the authors thereof. (See, 4 Williston, Contracts § 626, at 855-857 [3d ed Jaeger].)