**In re THOMSON McKINNON SECURI-TIES INC., Thomson McKinnon Inc. and Realty International Corporation, Debtors.**

**THOMSON McKINNON SECURITIES INC., Plaintiff,**

**v.**

**Richard M. HARRIS, Defendant.**

**No. 91 Civ. 096–06–005.
Bankruptcy Nos. 90 B 10914 (HS),
90 B 11805 (HS), 91 B 13820
(HS) and 92 0015 WP.
Adv. No. 91–6044A.**

United States District Court,
S.D. New York.

Jan. 28, 1992.

Debevoise & Plimpton, New York City, for debtors; Krista E. Trousdale and Nicholas S. Acker, of counsel.

Richard M. Harris, pro se.

## ORDER AND JUDGMENT ADJUDICATING ADVERSARY PROCEEDING

BRIEANT, Chief Judge.

Plaintiff Thomson McKinnon Securities Inc. ("TMSI") having commenced the above-captioned adversary proceeding against defendant Richard M. Harris ("Harris") by serving and filing a complaint dated February 14, 1991 in the United States Bankruptcy Court pursuant to 11 U.S.C. § 542(b), and

The Bankruptcy Court having held a trial of the above-captioned adversary proceeding on December 6, 1991, and having issued a Decision on Adversary Proceeding to Recover on a Promissory Note, dated December 13, 1991, in which the Bankruptcy Court made proposed findings of fact and conclusions of law for submission to this Court pursuant to 28 U.S.C. § 157(c)(1), and

The Court having considered the Bankruptcy Court's proposed findings of fact and conclusions of law, and

No party having timely objected to the Bankruptcy Court's proposed findings of fact and conclusions of law, and

IT APPEARING that this Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1334, and

IT FURTHER APPEARING that Harris is indebted to TMSI in the amount of $4,622.00, and

IT FURTHER APPEARING that Harris's debt to TMSI is property of TMSI's estate and is matured, payable on demand, or payable on order, it is hereby

ORDERED, ADJUDGED AND DECREED that TMSI shall recover of Harris the sum of $4,622.00, together with postjudgment interest accruing from the date of entry of the judgment pursuant to 28 U.S.C. § 961, and it is

FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to 11 U.S.C. § 542(b), that Harris shall immediately pay to TMSI, as debtor-in-possession, the sum of $4,622.00, together with postjudgment interest accruing from the date of entry of the judgment pursuant to 28 U.S.C. § 961.

United States Bankruptcy Court

Southern District of New York

Case No. 90 B 10904 and No. 90 B 11805

91 ADV. 6044

In re Thomson McKinnon Securities Inc. and Thomson McKinnon Inc., Debtors.

Thomson McKinnon Securities Inc., Plaintiff,

v.

Richard M. Harris, Defendant.

DECISION ON ADVERSARY PROCEEDING TO RECOVER ON A PROMISSORY NOTE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Forgiving indebtedness is difficult at any time, let alone during a recession. The debtor, Thomson McKinnon Securities, Inc. ("TMSI"), is unwilling to forgive a loan it made to one of its branch managers, the defendant, Richard M. Harris ("Harris"). After Harris refused to pay the loan, the debtor instituted this adversary proceeding to recover the amount due. Although Harris admits receiving the money in question, he argues that the money was not a loan, but rather, was given to him to induce him to remain with the debtor and that in any event, TMSI's President, Phillip M. Fahey ("Fahey"), assured him that the loan would be forgiven or at least paid down by applying the profits of the branch office managed by Harris. At the trial, TMSI argued that it had made out a prima facie case and that the parol evidence rule barred Harris from introducing evidence relating to whether the parties intended the loan to be forgivable and as to the details regarding how the loan was intended to be repaid.

PROPOSED FINDINGS OF FACT

1. On March 28, 1990, the debtor, TMSI, filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor filed its complaint in this adversary proceeding on March 25, 1991.

3. The plaintiff, TMSI, is a corporation organized under the laws of the State of Delaware. The defendant, Harris, is a former employee of TMSI, most notably, a branch manager at the debtor's offices in Lake Forest, Illinois. Harris now resides in Boise, Idaho.

4. On or about January 5, 1985, Harris attempted to resign as Branch Manager of the Lake Forest office at a meeting in Chicago, Illinois with TMSI's Regional Manager, Jim Price, and National Manager, Jerry Tankersley. Price and Tankersley refused to accept Harris's resignation and instead requested that Harris travel to New York City to meet with TMSI's President, Fahey. On January 7, 1985, Harris met with Fahey in New York City.

5. On or about January 9, 1985, after Harris returned to Lake Forest, Illinois, Fahey telephoned Harris and offered to wire $150,000.00 into Harris's checking account. Fahey also offered Harris the opportunity to manage the Pacific Northwest, Los Angeles and San Francisco branch offices, all of which he turned down. Harris claims Fahey stated, both during their meeting in New York City and during their telephone conversation, that the note was forgivable, that the Lake Forest manager profit sharing fund would account for the repayment of the loan, and that if Harris went into another position, TMSI would "work it out." TMSI also gave Harris a fifty percent increase in salary.

6. TMSI wired $150,000.00 into Harris's account that same day. TMSI did not require Harris to enter into any written agreement at the time the funds were wired.

7. Harris claims that the $150,000.00 and fifty percent raise in his salary were given to him as incentives to remain on as Branch Manager of the Lake Forest office. This position is consistent with the fact that Fahey called Harris to make him the offer immediately after a meeting which Harris was directed to attend so that he could present his resignation to Fahey.

Harris's testimony that Fahey represented to him that the $150,000.00 loan was forgivable is also supported by the fact that Fahey made such a representation at, and after, a meeting the express purpose of which was for Harris to present his resignation to Fahey.

8. Harris resigned as Branch Manager of the Lake Forest office in July or August of 1985, but remained with TMSI as a stock broker.

9. On September 23, 1985, two months after Harris resigned as Branch Manager of the Lake Forest office and nine months after TMSI wired the $150,000.00 into his account, TMSI sent him the promissory note regarding this transaction. Surprisingly enough, Harris executed the promissory note on October 3, 1985. The note has a typed date of "May 1985," however, Harris changed that date by hand to October 3, 1985, the date he executed the note. Harris claims that he signed the note after being told by TMSI officers that it was only a record keeping matter.

10. The note provides:

### PROMISSORY NOTE

In consideration for a loan by THOMSON McKINNON SECURITIES INC., a Delaware Corporation (hereinafter referred to as the "Holder") in the amount of One Hundred Fifty Thousand $150,000 dollars to Richard M. Harris (hereinafter referred to as the "Maker"), Maker promises to pay Holder, at One New York Plaza, New York, New York 10004, or at such other place within the United States of America which Holder may designate in writing to Maker, the sum of One Hundred Fifty Thousand ($150,000) on or before March 1, 1989 plus interest at Holder's cost of money. *Repayment of this loan shall be made by crediting Maker's manager profit sharing payable in calendar years 1986, 1987, 1988 and 1989 against the outstanding balance of the loan with the remaining balance, if any, being due and payable on March 1, 1989.*

In the event of the occurrence of any of the following: a default in the re-payment of the loan, death of the Maker, termination of Maker's employment with Holder, Maker's reassignment to a position other than branch office manager, an assignment by Maker for the benefit of creditors, appointment of a receiver to manage the property of Maker, institution of voluntary or involuntary proceedings concerning Maker under the Bankruptcy Act, as amended; the Holder may, at its option without prior notice or presentment demand or declare this Promissory Note immediately due and payable.

Holder may, without notice and without releasing the liability of any party hereto, grant extensions and/or renewals hereof from time to time and for any term or terms. No delay by Holder or its assignee, if any, in exercising any power or right hereunder and no partial exercise of such power or right, shall operate in any way as a waiver of any subsequent exercise thereof. Holder shall not be liable for or prejudiced by any lack of diligence in obtaining any payment on this Promissory Note or any renewal or extension thereof.

Maker hereby waives any notice, protest, presentment or demand for payment. This Promissory Note shall be governed by the Laws of the State of New York.

Promissory Note, Trial Exhibit 1 (emphasis added).

11. The manager profit sharing fund attributable to the Lake Forest office for the period between 1985 and 1989 was $138,378.00. At no time did the debtor apply any of these funds to reduce the unpaid balance of the note, despite the express language in the note which states that these funds would be the primary source of repayment, with Harris responsible for any unpaid portion.

12. Although the promissory note provides that the loan is subject to "interest at Holder's cost of money," TMSI removed the interest from the account. Trial Exhibit I. TMSI does not seek the interest, only $143,000.00, which it claims it is owed as principal.

13. By letter dated November 15, 1989, TMSI informed Harris that "[o]ur accounting records indicate that you have an open debt obligation owing to Thomson in the amount of approximately $143,000.00," and that TMSI "would like to hear from you so that we can find a convenient method for you to close this matter.[1]" Trial Exhibit 4. On September 12, 1990, TMSI's attorney's sent Harris a similar letter requesting immediate payment of the $143,000.00. Trial Exhibit 5.

14. Harris made two payments to TMSI that relate to the money that he received. Harris paid TMSI $3500.00 by check dated August 9, 1988 and $3500.00 by check dated November 14, 1988. Harris made no further payments.

15. Harris claims that he made the two payments because he feared TMSI would terminate his Employee Stock Option Plan, in which he states that he had a $350,-000.00 interest.

16. The parol evidence rule does not preclude Harris from introducing evidence to the effect that TMSI's President, Fahey, intended the loan to be a forgivable one. The note specifically states that repayment shall be made by crediting the maker's manager profit sharing fund attributable to Harris's branch office, with Harris being personally responsible for any uncredited balance. The testimony that Fahey said the note was forgivable is consistent with the source of repayment expressed in the note and does not contradict its written terms.

17. Additionally, the note, without a merger clause, is not a completely integrated written agreement because it does not incorporate the oral understanding expressed by Fahey that TMSI would not look to Harris for repayment because the note was forgivable. Moreover, the note is ambiguous because when it was issued, Harris was no longer a branch manager, yet the note states that his branch manager profit sharing fund is the primary source for repayment and is to be credited against the unpaid balance of the loan.

18. Another reason for rejecting, in part, the parol evidence rule as a bar against Harris's defenses is the fact that Harris asserted that he was induced to sign the note by false and fraudulent representations. As a general matter, the parol evidence rule does not preclude the introduction of evidence with respect to fraud in the inducement. Although the parol evidence rule does not bar Harris from testifying that the note was to be repaid by crediting the funds in the manager profit sharing account against any unpaid portion of the loan, the rule does bar Harris from testifying regarding Fahey's representation that the note was forgivable. By introducing evidence that Fahey represented that the note was to be forgivable, Harris seeks to prevent the enforcement of the provisions of the note holding him personally liable, while keeping in place the provision of the note calling for the crediting against his unpaid loan balance the amount in the manager profit sharing account for the period 1986 through 1989. The parol evidence rule precludes a party from introducing proof of fraud to demonstrate that only some provisions of an agreement should not be enforced.

## DISCUSSION

TMSI argues that the parol evidence rule precludes Harris from introducing evidence to substantiate that Fahey intended the loan to be a forgivable one. Therefore, TMSI believes that the case is an easy one because the note is clear and that under its terms TMSI may, as it does now, demand payment on the note.

Harris asserts several affirmative defenses. In his First Affirmative Defense, Harris argues that the loan was intended as a forgivable one and that TMSI's demand for payment is therefore in violation of the note. Harris's Second Affirmative Defense is that TMSI's President, Fahey,

---

**1.** It is noted that the letter, dated November 15, 1989 and on TMSI stationery, is addressed to Harris at his Boise, Idaho address, while TMSI's complaint in this adversary proceeding, filed March 25, 1991, refers to the defendant as having a "last known address [of] 850 Timber Lane, Lake Forest, IL 60045."

and other TMSI officers fraudulently induced him into signing the promissory note, and that therefore the note should be rescinded. In his Third Affirmative Defense, Harris asserts that by the note's own terms, TMSI should have credited against the unpaid balance of the loan, on a yearly basis, any and all profits at the Lake Forest office. Because the manager profit sharing fund attributable to the Lake Forest office for the period between 1985 and 1989 was $138,378.00, Harris states that the only amount he may possibly owe is $4,622.00, the difference between the paid down principal, $143,000.00, and the amount in the manager profit sharing fund, $138,378.00. Harris asserts as his Fourth Affirmative Defense that the note fails for lack of consideration.

### The Parol Evidence Rule

■ Pursuant to the final provision of the promissory note, this court will apply New York law. In New York, the parol evidence rule is a rule of substantive law, which precludes a party from introducing prior or contemporaneous, extrinsic evidence to contradict or vary clear and unambiguous terms of a valid, integrated written agreement. *Mastrangelo v. Kidder, Peabody & Co., Inc.,* 722 F.Supp. 1126, 1131 (S.D.N.Y.1989). The parol evidence rule does not apply when the evidence sought to be introduced does not contradict the express terms of the written agreement in question. *Marine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 388 n. *, 425 N.E.2d 805, 808 n. *, 442 N.Y.S.2d 417, 420 n. * (1981); *Long Island Trust Co. v. International Institute For Packaging Education, Ltd.,* 38 N.Y.2d 493, 497, 344 N.E.2d 377, 380, 381 N.Y.S.2d 445, 448 (1976).

■ The evidence Harris introduced was his own testimony that Fahey and other corporate officers told him that the loan was a forgivable one and that in any event it would be repaid from the manager profit sharing account for the Lake Forest office. The note specifies: "Repayment of this loan shall be made by crediting Maker's manager profit sharing payable in calendar years 1986, 1987, 1988 and 1989 against the outstanding balance of the loan with the remaining balance, if any, being due and payable on March 1, 1989." Therefore, this evidence does not contradict the express terms of the promissory note, but in fact provides further support for the language in the note which specifies the primary source of repayment of the loan. Even if this court found that the evidence Harris introduced contradicted the written promissory note, the introduction of the evidence was proper because the written agreement is not integrated, is ambiguous, and because Harris has alleged that he was fraudulently induced into signing the note.

■ An integrated writing is one which completely and accurately embodies all of the mutual rights and obligations of the parties. *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 476 (S.D.N.Y.1988). "[U]nder New York law a contract which appears complete on its face is an integrated agreement as a matter of law." *Battery S.S. Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 n. 3 (2d Cir.1975). However, New York law provides that where the writing does not contain a merger clause, as here, "the court must determine whether or not there is an integration by reading the writing in the light of surrounding circumstances and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing." *Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 456 N.E.2d 802, 805, 468 N.Y.S.2d 861, 864 (1983) (citing *Ball v. Grady,* 267 N.Y. 470, 472, 196 N.E. 402, 403 (1935); *Mitchill v. Lath,* 247 N.Y. 377, 381, 160 N.E. 646 (1928)).

The New York Court of Appeals long ago set forth the following guideline for this determination:

> If upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to [determine] its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, it constitutes the con-

tract between them, and is presumed to contain the whole of that contract. *Eighmie v. Taylor,* 98 N.Y. 288 (1885). *See also Adler,* 721 F.Supp. at 477; *Lee v. Joseph E. Seagram & Sons, Inc.,* 413 F.Supp. 693, 701, *aff'd,* 552 F.2d 447 (2d Cir.1977). New York courts have considered certain factors in determining whether a contract is integrated.

> [W]hether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties "is the sort of complex arrangement which is customarily reduced to writing" *Manufacturers Hanover Trust Company v. Margolis,* 115 A.D.2d 406, 407–8, 496 N.Y.S.2d 36, 37 (1st Dep't 1981); whether the parties were represented by experienced counsel when they entered into the agreement, *Pecorella v. Greater Buffalo Press, Inc.,* 84 A.D.2d 950, 446 N.Y.S.2d 709 (4th Dep't 1981); whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental, *Braten v. Bankers Trust Co.,* 60 N.Y.2d at 162, 468 N.Y.S.2d at 864, 456 N.E.2d at 805 (1983); if the contract, which does not include the standard integration clause, nonetheless contains wording like " '[i]n consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that the foregoing correctly sets forth your understanding of our Agreement' ", *Lee v. Joseph E. Seagram & Sons,* 413 F.Supp. at 701.

*Adler,* 721 F.Supp. at 477.

Both a reading of the promissory note and consideration of the surrounding circumstances warrant concluding that the note is not a complete written instrument. Therefore, this court will consider the testimony of Harris regarding Fahey's representation that the note was forgivable and Fahey's assurances that the funds in the manager profit sharing account were to be credited against the unpaid balance of the loan. This position is based on several grounds. The promissory note itself supports this conclusion. The note contains no merger clause. As previously noted, the language of the note incorporates the alleged oral agreement between Fahey and Harris regarding repayment of the loan from the manager profit sharing account, but does not refer to the loan being forgivable. An agreement that would make a $150,000.00 obligation forgivable is the sort of complex arrangement that would customarily be reduced to a writing. Furthermore, although Harris testified that he took the promissory note to an attorney before signing it, Harris was not represented by counsel and there were no negotiations regarding the note. Harris testified that he signed the note after representations that the note was simply a record keeping necessity.

■ Even if this court were to find that the promissory note is integrated, parol evidence may be admitted if the written agreement is ambiguous. *Burger King Corp. v. The Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983) ("[w]here contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting...."); *Adler,* 721 F.Supp. at 479; *Ralli v. Tavern on the Green,* 566 F.Supp. 329, 331 (S.D.N.Y.1983) ("Where the language employed in a contract is ambiguous or equivocal, the parties may submit parol evidence concerning the facts surrounding the making of the agreement in order to demonstrate the intent of the parties.").

■ The language employed in the promissory note is ambiguous. While the note calls for repayment from the manager profit sharing account for calendar years 1986 through 1989, the note also provides that if Harris, the maker, is reassigned to a position other than branch manager, the holder, TMSI, may immediately declare the note due and payable. These provisions cannot be harmonized when one considers that the note was executed on October 3, 1985, after Harris had resigned as branch manager and was working as a stock bro-

ker for TMSI. Although TMSI urges this court to read the note such that any reduction of the loan by funds in the manager profit sharing account should only occur for the period Harris was the manager of the Lake Forest office, one may reasonably interpret the repayment clause of the promissory note as calling for repayment of the loan to Harris from the manager profit sharing account regardless of whether Harris was the branch manager because at the time Harris executed the note he was no longer the branch manager so that the provision would be meaningless and superfluous. Accordingly, this court finds that the note is ambiguous and therefore the court may consider parol evidence regarding the intent of the parties at the time of contracting. The court may consider whether the parties intended the loan to be forgivable and whether the parties intended the amount in the manager profit sharing account for the period 1986 through 1989 to be credited against the unpaid loan balance regardless of whether Harris was the branch manager for the period 1986 through 1989.

■ Even if this court were to find that the promissory note was not ambiguous, the evidence of the intent of the parties as to whether the loan was a forgivable one would be barred by the parol evidence rule, while evidence that the loan was to be repaid from the manager profit sharing account would not be precluded by the parol evidence rule. As a general matter, the parol evidence rule does not apply where fraud is alleged. *Sabo v. Delman*, 3 N.Y.2d 155, 161, 143 N.E.2d 906, 908, 164 N.Y.S.2d 714, 717 (1957). In *Sabo*, the court held that "a contractual promise made with the undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause, the plaintiff is free to prove that he was induced by false and fraudulent misrepresentations...." *Sabo*, 3 N.Y.2d at 162, 143 N.E.2d at 909, 164 N.Y.S.2d at 718. However, proof of fraud may only be introduced to show the intent of the parties such that the entire contract is a nullity and may not be offered to demonstrate that some provisions of an agreement should not be enforced. *Mein-*

*rath v. The Singer Co.*, 482 F.Supp. 457, 460–61 (S.D.N.Y.1979), *aff'd*, 697 F.2d 293 (2d Cir.1982).

■ In the present case, Harris asserts, as his Second Affirmative Defense, that because of the fraudulent misrepresentations he is not liable to TMSI. *Answer*, at 4. But, Harris does not contest that the note was to be reduced in the first instance from funds in the manager profit sharing account. Instead, Harris's testimony was that he was given assurances that the firm would "work it out" with him such that he should not worry about his own personal liability for the note. By introducing evidence that Fahey intended the note to be forgivable, Harris seeks to prevent the enforcement of the provision of the note holding him personally liable, while keeping in place the provision of the note calling for the crediting against his unpaid loan balance the amount in the manager profit sharing account for the period 1986 through 1989. Therefore, under the fraud exception to the parol evidence rule, this court may consider whether funds in the manager profit sharing account were to be credited against the unpaid balance of the loan regardless of whether Harris was the branch manager during the period 1986 through 1989, but may not consider whether Fahey intended the loan to be forgivable.

Because evidence relating to both of these issues is admissible under more than one theory, as noted above, both will be considered.

### TMSI'S Prima Facie Case

■ At trial, TMSI established its cause of action by introducing the executed promissory note in question and by demonstrating that Harris only made two payments on the note totalling $7,000.00, leaving a balance of $143,000.00. Harris does not contest the fact that he signed the promissory note, nor does he take issue with TMSI's claim that he only made $7,000.00 in payments on the note. As noted earlier, TMSI does not seek interest on the note, although the note does provide for "interest at Hold-

er's cost of money" because TMSI removed interest from Harris's account.[2] *See* Trial Exhibit I.

As TMSI has established a prima facie case, it is incumbent upon Harris to go forward with evidence as to his defense.

### Enforcement of the Terms of the Promissory Note

In his Third Affirmative Defense, Harris argues that by the very terms of the promissory note, he only owes TMSI $4,622.00, the difference between the paid down principal, $143,000.00, and the amount in the manager profit sharing account, $138,378.00. TMSI argues that the provision in the note allowing for the crediting of the manager profit sharing account against the unpaid balance of Harris's loan only applies if funds were deposited in that account while Harris was the branch manager for the Lake Forest office. Because Harris was not the branch manager from 1986 through 1989, the period specified in the note for which credit to Harris's unpaid loan balance would be allotted, TMSI's position is that no crediting to Harris's loan should occur.

■ "The objective of contract interpretation is to give effect to the expressed intention of the parties." *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1271 (2d Cir.1989). Further, where an ambiguity exists in a standard-form contract supplied by one of the parties, the ambiguity must be resolved against that party. *Westchester Resco Co. v. New England Reinsurance Corp.,* 818 F.2d 2, 4 (2d Cir.1987). Therefore, the ambiguous provisions of the note must be construed against TMSI.

■ Although the plain language of the note states that the loan would be repaid by crediting the amount in Harris's manager profit sharing account for the calendar years 1986 through 1989, Harris was not the branch manager at the time the note was executed. Therefore, the meaning of the provision is ambiguous. Either the provision was intended as Harris asserts, or the provision is superfluous and meaningless because the note was signed after Harris resigned as branch manager. Although it is possible that the parties intended the provision to be meaningless, "such an interpretation is not preferred and will be avoided if possible." *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 27 (2d Cir.1988); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir. 1985) (interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"). It may be argued that the provision which allows TMSI to demand immediate payment of the note should Harris be reassigned to a position other than branch manager supports the argument that Harris had to remain as branch manager to receive such a credit to the loan. However, such a reading of the note would mean that TMSI, from the moment it presented the note to Harris for execution, did not intend to keep that promise to so credit Harris's account because at the time Harris signed the note he was no longer the branch manager.

If the provision were found meaningless, as TMSI suggests, then the note is not integrated and Fahey's representations that the note was forgivable, which went uncontested and are admissible under the exception to the parol evidence rule, render Harris not personally liable on the note. Otherwise, the provision must be given Harris's interpretation, which is supported by the circumstances that the loan was given. Harris was given the $150,000.00 as an incentive to remain on as Branch Manager of the Lake Forest office. This position is consistent with Fahey's calling Harris to communicate to him the amount and terms of the loan immediately after a meeting which Harris attended so that he could present his resignation to Fahey. Harris's

**2.** It is noted that the complaint in this adversary proceeding, filed March 25, 1991, sought interest "at TMSI's cost of money." *Complaint,* at 3. However, TMSI prepared, on its own stationery, a statement of Harris's account for the period ending August 31, 1988, which shows that TMSI had decided to remove the interest. *See* Trial Exhibit I.

testimony that Fahey represented to him that the loan was forgivable is also supported by the fact that Fahey made such a representation at, and after, a meeting the express purpose of which was for Harris to present his resignation to Fahey.

The fact that Harris was led to believe that the loan was "forgivable" does not mean that the entire indebtedness was cancelled. Harris was simply given to understand that to the extent there were funds available in the manager profit sharing account, there would be no personal liability but that Harris was personally liable for any difference between the amount in the account and the loan. Therefore Harris is liable for this deficiency, which amounts to the sum of $4,622.00.

### Fraudulent Inducement

In his Second Affirmative Defense, Harris alleges that TMSI fraudulently induced him into signing the promissory note by representing to him that the note would be reduced by crediting the funds in the manager profit sharing account for the period 1986 through 1989 against any unpaid loan balance.

 Fraud in the inducement bars recovery by a plaintiff on a promissory note. *Westbury Small Business Corp. v. Ballarine*, 128 Misc.2d 469, 489 N.Y.S.2d 815, 824 (1985), *aff'd*, 125 A.D.2d 462, 509 N.Y.S.2d 569 (1986). Under New York law, the elements of a cause of action or defense sounding in fraud are: (1) a misrepresentation of an existing fact; (2) which misrepresentation was false and known to be false; (3) which misrepresentation was made for the purpose of inducing the other party to rely upon it; (4) the other party justifiably did so rely upon said misrepresentation; and (5) such misrepresentation resulted in injury. *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958); *Ballarine*, 128 Misc.2d 469, 489 N.Y.S.2d 815.

To establish fraud in the inducement, a Harris must prove that TMSI intended, at the time of contracting, to deceive him by not carrying out the future representation, namely that the funds in the manager profit sharing account would be credited against any unpaid balance of the loan. *Thomason's Nathan's Associates v. Hajek*, 169 A.D.2d 568, 564 N.Y.S.2d 422, 422 (1991); *Benderson Development Co., Inc. v. Hallaway Properties, Inc.*, 115 A.D.2d 339, 495 N.Y.S.2d 820, 821 (1985), *aff'd*, 67 N.Y.2d 963, 494 N.E.2d 106, 502 N.Y.S.2d 1001 (1986).

 Because this adversary proceeding is a matter related to the present bankruptcy case, heard pursuant to 28 U.S.C. § 157(c)(1), and would not be before this court but for the bankruptcy, the burden of proof required under New York law will apply. New York law requires a defendant to make out a defense based upon fraud by clear and convincing evidence. *Simcuski v. Saeli*, 44 N.Y.2d 442, 377 N.E.2d 713, 406 N.Y.S.2d 259 (1978); *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 280 N.E.2d 867, 330 N.Y.S.2d 33 (1972).

 In the present case, Harris asserts that TMSI's President, Fahey, and other TMSI officers, made false statements to him to induce him to sign the promissory note upon which TMSI now seeks payment. Fahey's statement to Harris that the loan would be reduced by crediting the manager profit sharing account for the calendar years 1986 through 1989 against the loan was not a misrepresentation because that promise was incorporated into the note. Harris also emphasizes that TMSI did not require him to execute a promissory note at the time the funds were wired into his account. TMSI did not present Harris with the promissory note, which it back-dated to May 1985, until September of 1985, nine months after the funds were wired into his account and after he had resigned as branch manager. At that point, Harris asserts that the note had an inconsistency because it provides that in the event of his "reassignment to a position other than branch office manager," TMSI could declare the note immediately due and payable. Because Harris was no longer Branch Manager of the Lake Forest office,

but instead was a broker for TMSI, he argues that TMSI included a promise in the note that it did not intend to keep from the moment the note was presented and executed.

Harris has not established by clear and convincing proof that TMSI, by its president and officers, induced him to sign the promissory note by misrepresenting the specifics regarding the repayment of the loan. Harris has not offered any proof that at the time of contracting, TMSI intended to deceive him by not crediting his account with the manager profit sharing proceeds. All that Harris has shown is that at some point after he signed the promissory note, TMSI decided not to credit his unpaid loan balance with the manager profit sharing proceeds. TMSI may have made this decision because TMSI's understanding of the deal was that such a crediting against Harris's unpaid loan balance was only to occur if Harris remained as Branch Manager of the Lake Forest office or because TMSI decided not to comply with what Harris states was the deal, namely, that such a crediting was to occur whether or not Harris remained in that position or not. "Proof of failure to keep a promise may tend to establish the intent not to keep it, but common experience teaches us that such proof is not conclusive; that the making of an unkept promise does not imply of necessity in all cases a present intention not to keep the promise." *Adams v. Clark*, 239 N.Y. 403, 146 N.E. 642, 644 (1925). It is TMSI's present intention, at the time of contracting, not to keep the promise to credit against his unpaid loan balance any funds in the manager profit sharing account, that Harris has failed to show. Therefore, because Harris has not met his burden of proof as to fraud in the inducement, his Second Affirmative Defense must fail.

### *Lack of Consideration*

■ Harris's argument that the note fails for lack of consideration is not persuasive. Although past consideration is usually not adequate consideration to support a promise, *Umscheid v. Simnacher*, 106 A.D.2d 380, 482 N.Y.S.2d 295, 297

(1984), there is an exception to this general rule which is set forth in section 5–1105 of the New York General Obligation Law, which states:

A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, *if the consideration is expressed in the writing* and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.

N.Y.Gen.Oblig.Law § 5–1105 (McKinney 1989) (emphasis added). Here, the prior payment to Harris of $150,000.00, which Harris admits receiving, is expressed in the note. *See, e.g., Hoke v. Shanker*, 108 A.D.2d 1065, 1066, 485 N.Y.S.2d 634, 636, *appeal denied*, 65 N.Y.2d 605, 482 N.E.2d 1230, 493 N.Y.S.2d 1027 (1985). The note reads: "In consideration for a loan by THOMSON McKINNON SECURITIES INC., ... in the amount of One Hundred Fifty Thousand $150,000.00 dollars to Richard M. Harris...." This language is clear and specifically sets out the amount of the consideration, for which the note was signed. *See Delacorte v. Transcontinental Land and Cattle Corp.*, 127 Misc.2d 707, 486 N.Y.S.2d 811, 813 (1985). The note does not, therefore, fail for lack of consideration.

### PROPOSED CONCLUSIONS OF LAW

■ 1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). The debtor's suit against defendant Harris is a noncore proceeding within the meaning of 28 U.S.C. § 157(c)(1). This is a civil proceeding which neither arises under title 11 nor arises in a case under title 11, but is related to a case under title 11, as authorized under 28 U.S.C. § 1334(b). Accordingly, the proposed findings of fact and conclusions of law are submitted to the district court for a final order or judgment to be entered by the district court after considering the proposed findings and conclusions and after reviewing *de novo* those matters to

which any party has timely and specifically objected as expressed in 28 U.S.C. § 157(c)(1).

2. The parol evidence rule does not preclude Harris from introducing evidence to the effect that TMSI's President, Fahey, represented to him that the loan was a forgivable one or that funds in the manager profit sharing account were to be credited against any unpaid balance of the loan regardless of whether Harris remained as Branch Manager of the Lake Forest office.

3. TMSI has established a prima facie case that Harris owes TMSI $143,000.00.

4. The fact that Harris was led to believe that the loan was forgivable does not cancel the entire indebtedness. Harris was simply given to understand that to the extent there were funds available in the manager profit sharing account, there would be no personal liability but that Harris was personally liable for any difference between the amount in the account and the loan. Therefore Harris is liable for this deficiency, which amounts to the sum of $4,622.00.

5. Harris has failed to establish fraud in the inducement because he failed to prove that TMSI intended to deceive him at the time he executed the promissory note.

6. The promissory note sets forth the amount of the consideration for which the loan was signed and therefore does not fail for lack of consideration pursuant to New York General Obligation Law § 5–1105 (McKinney 1989).

SETTLE ORDER on notice.

Dated: White Plains, New York

December 13, 1991