INTERNATIONAL MINERALS &
CHEMICAL CORPORATION,
Respondent,

Mallinckrodt, Inc., Respondent,

v.

AVON PRODUCTS, INC., Appellant.

No. 73734.

Supreme Court of Missouri,
En Banc.

Oct. 16, 1991.
Dissenting Opinion Nov. 19, 1991.

Frank N. Gunlach, Thomas Cummings,
Jordan B. Cherrick, St. Louis, for appellant.

William G. Guerri, W. Stanley Walch,
Michael J. Morris, St. Louis, for respondents.

BLACKMAR, Judge.

On February 28, 1986, Avon Products, Inc. sold all of the stock of a wholly-owned subsidiary, Mallinckrodt, Inc., to International Minerals and Chemical Corporation for a price of $675,000,000 cash. Avon undertook to indemnify International against contingent liabilities of Mallinckrodt. A pending patent suit by E.I. DuPont de Nemours & Company was specifically listed in a schedule of such liabilities known to Avon at the time of closing. The trial court's decree, entered in January of 1987, was not substantially unfavorable, but the judgment on appeal was disastrous to Mallinckrodt, producing a situation in which one of its most profitable products could be marketed only if it paid DuPont substantial damages and a large continuing royalty. Mallinckrodt settled the suit with the consent of Avon, with Avon seeking to preserve certain rights in its letter of consent.

Mallinckrodt filed suit seeking indemnity for the DuPont settlement and other liabilities not here material. The trial court, after a series of procedural skirmishes, entered a partial summary judgment finding that Avon was liable under the indemnity clause but leaving damages for later determination. The court on its own initiative found, pursuant to *Rule 74.01(b)*, that there was no just reason for delay in entering judgment on this claim, and Avon appealed. The Court of Appeals, Eastern District, dismissed the appeal, finding that the trial court lacked the authority to enter an appealable judgment. We granted transfer to consider the scope of *Rule 74.-01(b)*, and now assume jurisdiction of the entire appeal. We determine that appellate jurisdiction is present, affirm the partial judgment of the trial court, and remand for further proceedings.

### 1. Appealability

■ Both parties disagree with the jurisdictional ruling of the court of appeals and urge us to consider the merits of the appeal. Their consent is not enough. We must determine for ourselves whether appellate jurisdiction is present. Once we make this essential finding, however, the parties' consent or acquiescence may operate to eliminate or to waive procedural problems which fall short of being jurisdictional.

■ The plaintiffs initially filed a petition for declaratory judgment of liability for indemnity. This petition was dismissed by Circuit Judge Robert G. Dowd, Jr., with leave to amend, on the basis that there was an adequate remedy at law rendering declaratory relief unnecessary. The plaintiffs then filed an amended petition in five counts. Count I sought a declaratory judgment of liability. Counts II, III and IV sought declaratory relief involving other unrelated claims for indemnification. Count V was an action for damages for breach of the indemnity contract. In the musical chair operation of the 22nd Judicial Circuit the case passed to Judge Ryan, who dismissed the portions of the prayers seeking declaratory relief. The case was then assigned to Judge McBride.

The plaintiffs filed a motion for summary judgment as to liability. The parties adduced voluminous depositions, affidavits and exhibits. The trial court sustained this motion, by an order specifying as follows:

The Court enters its order and judgment herein granting plaintiffs' motion for partial summary judgment on liability with respect to Count I only, and *sua sponte*, pursuant to Supreme Court Rule 74.01(b) and *Hampton Foods, Inc. v. Wetterau Finance*, 780 S.W.2d 79 (Mo. App.1989), designates its order and judgment final for purposes of appeal, and expressly determines that there is no just reason for delay in the appeal of its order and judgment.

The court of appeals, in a thorough and scholarly opinion, concluded that a judgment of this kind, adjudging liability only and not ruling the issue of damages, could not constitute a final and appealable judgment because, by leaving damages for future determination, it did not finally determine any discrete segment of the case. The opinion cited numerous federal authorities construing *Rule 54(b), FRCP*. The tenor of these holdings is that a trial judge

cannot enter an appealable judgment which determines only the issue of liability, leaving the question of damages for future determination. There are indications that the federal cases are not unvarying in this holding, but we need not pursue the point. Federal authorities are of interest but not controlling. In contrast to some of our other procedural rules, *Rule 74.01(b)* does not borrow substantially from the federal model. It reads as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

We believe that our rule allows the trial court more discretion than would apparently be permitted under some of the federal authorities cited. In *Speck v. Union Electric Co.*, 731 S.W.2d 16 (Mo. banc 1987), the trial court designated its judgment dismissing the case against one of several defendants as final for purposes of appeal, under our prior *Rule 81.06*.[1] We sustained appellate jurisdiction even though the court of appeals had found that a judgment terminating the case as to one party only could

not be appealable. The convenience of permitting an immediate appeal was apparent because, in the context of *Missouri Pacific Railway Co. v. Whitehead & Kales*, 566 S.W.2d 466 (Mo. banc 1978), it is important to know which defendants will remain in the case. We upheld the discretion of the trial court in its designation of finality under the rule then in force.

To the same effect is *Spires v. Edgar*, 513 S.W.2d 372 (Mo. banc 1974), in which the trial court dismissed a petition as to one of three defendants, and the plaintiff appealed. The trial court designated the dismissal order as final under then *Rule 81.06*. The Court found appealability, rejecting a much narrower construction of *Rule 81.06* advocated in a dissenting opinion.[2]

In *Dotson v. E.W. Bacharach, Inc.*, 325 S.W.2d 737 (Mo.1959), the Court dismissed an appeal from a judgment dismissing a counterclaim, solely because the judgment did not include the required language of finality prescribed by *Rule 81.06*. The Court reviewed the history of *Rule 81.06*, and suggested that the judgment might be modified to include the required language. The holding is particularly significant because, as the opinion pointed out, the counterclaim from which appeal was sought was a compulsory counterclaim. The opinion suggests that that circumstance would not interpose any theory of completeness as a bar to appealability.

In *Landoll v. Dovell*, 752 S.W.2d 323 (Mo. banc 1988), the trial court had entered a judgment determining paternity, and also assessed support *pendente lite*. Our specific holding was that this latter order was not authorized in a paternity action, because, for want of statutory basis, support

1. The pertinent parts of former *Rule 81.06* read as follows:

> When a separate trial of any claim, counterclaim or third-party claim is ordered in any case and a jury trial thereof is had, the separate judgment entered upon the verdict therein shall be deemed a final judgment for the purposes of appeal within the meaning of Section 512.020, RSMo. When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other

claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, RSMo, unless specifically so designated by the court in the judgment entered.

2. We see no substantial distinction between *Rule 74.01(b)* and former *Rule 81.06*, except that the former requires an explicit recital that there is "no just reason for delay."

in a paternity action could only be awarded by a final judgment. We suggested that *Rule 74.01(b)* provided an appropriate vehicle for appealing a judgment declaring paternity prior to the resolution of monetary issues, if the trial judge makes the appropriate determination. The determination of paternity is a matter which could be the subject of a separate judgment, and so could be the subject of a *74.01(b)* appeal.

In *St. Louis Firefighters Association v. City of St. Louis*, 637 S.W.2d 128 (Mo.App. 1982), a suit was brought to determine the rights of firefighters under the charter amendment which required that they receive the same compensation and benefits as were paid to police officers. The trial court issued a partial summary judgment, allowing some of the items claimed by the firefighters but rejecting other claims. The monetary aspects of the judgment were not ruled. The court designated this order as final under *Rule 81.06*, and the court of appeals affirmed on the merits. As the court of appeals observed in the case now before us, the issue of jurisdiction over the appeal was not argued by the parties in that case and was not discussed by the court. The court of appeals, however, is keenly aware of its responsibility for determining whether it has jurisdiction,[3] and its disposition of this case on the merits is probative of the general understanding of the scope of *Rule 81.06*.

So here a determination of liability is a matter that can be the subject of an independent judgment. The trial court's judgment, however labeled, is essentially a declaratory judgment determining liability. This is an appropriate judgment capable of standing alone. Whether declaratory relief is unnecessary because of the availability of an action for damages is a question for the discretion of the trial court. We notice that all of the claimed damages had not accrued at the time the trial court entered partial summary judgment, and this circumstance favors the trial court's election to proceed as it did.[4] So long as the case remains in the circuit court a prior judge's

procedural rulings are subject to modification by a judge to whom the case is later assigned. Our analysis is fortified by *Rule 74.04(c)*, which authorizes the entry of summary judgment on issues of liability, leaving questions of damage for future determination.

It is the sense of *Rule 74.01(b)* that the trial judge have broad discretion in determining whether to enter a partial and appealable judgment. Our cases find no obstacle to this in *§ 512.020, RSMo 1986*, which, with exceptions there stated, allows appeals only from "final" judgments, or in *Article V, Sec. 5*, providing that procedural rules may not affect the "right of appeal." *Speck* and *Landoll* are ample authority for our defining by rule the scope of the finality requirement so as to include any determination that could be made the subject of a separate judgment. It is important to observe that there may be no appeal pursuant to *Rule 74.01(b)* unless the trial court makes the required finding. The trial judge is best equipped to form an informed conclusion as to the most efficient and economical course for the litigation to take.

There is no occasion to determine at this point whether the appellate court may decline to proceed with an appeal of less than the whole case, even though the trial court has made the declaration required for an appealable judgment. We are persuaded that there was absolutely no abuse of discretion in this case, and counsel on both sides apparently agree that it would be convenient and efficient to determine the merits of the appeal. Convenience of course is of no significance unless there is legal authority, but we also find appropriate legal authority.

### 2. The Merits

■ To uphold a summary judgment we must be persuaded that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Rule 74.04(c)*. There

---

**3.** *See Hampton Foods, Inc. v. Wetterau Finance Company*, 780 S.W.2d 79 (Mo.App.1989).

**4.** We, of course, intimate no view as to what damages may be recovered.

may be no summary disposition of any disputed factual matters.

■ The plaintiffs base their action on the indemnity provisions of the agreement for the sale of the Mallinckrodt stock, executed December 19, 1985. These read in pertinent part as follows:

Section 8.2. *Indemnification by Avon.* Effective upon the Closing, Avon agrees to indemnify Purchaser and (without duplication) New Mallinckrodt and hold Purchaser and (without duplication) New Mallinckrodt harmless from all out-of-pocket losses, costs, expenses (including reasonable attorneys' fees and expenses) and liabilities incurred by Purchaser or (without duplication) New Mallinckrodt as a result of (*a*) any breach by Avon and the Selling Companies of their representations and warranties contained in this Agreement or (*b*) (without duplication) any contingent liability of Mallinckrodt or New Mallinckrodt, whether or not set forth in the Avon Disclosure Schedule, to the extent (but only to the extent) based on or arising out of events, acts, omissions, conditions or a state of facts occurring or existing on or prior to the Closing Date except to the extent reserved or otherwise provided for (to the extent permitted to be so reserved or provided for in accordance with the terms hereof) on the books and records of Mallinckrodt or New Mallinckrodt, as the case may be. It is understood that such liabilities include (without limitation; but for example), claims of the nature referred to in Section 2.14 of Avon's Disclosure Schedule, such as the Bennett and related litigation, and environmental responsibilities and liabilities (including costs of decontamination and cleanup) to the extent (but only to the extent) based on or arising out of the operations of Mallinckrodt, on or prior to the Closing Date, such as those referred to in Sections 2.7, 2.12, and 2.14.

Purchaser's rights to indemnification under this Section 8.2 shall be limited as follows:

\*    \*    \*    \*    \*    \*

(iii) Purchaser shall be entitled to indemnification under this Section 8.2 only to the extent that the aggregate amount of such losses, costs, expenses or liabilities incurred by Purchaser (other than those relating to representations and covenants in respect of Taxes in Sections 2.15, and 4.2.7) exceeds $5,000,000.

\*    \*    \*    \*    \*    \*

Section 8.5. *Indemnification Procedures.* Whenever any claim shall arise for indemnification under Section 8.2 or 8.3, the party seeking indemnification (the "Indemnified Party") shall promptly so notify the other party (the "Indemnifying Party") in writing, and shall promptly convey all communications and information in respect thereof to the Indemnifying Party. If the Indemnified Party is entitled to indemnification against a claim made by a third party, the Indemnifying Party shall have the right (without prejudice to the right of the Indemnified Party to participate at its expense through counsel of its own choosing) to contest or defend such third party claim at its expense and through counsel of its own choosing. The parties hereto shall render to one another all such assistance and cooperation as may reasonably be requested in order to insure the proper and adequate defense of any such third party claim (including, without limitation, the handling of any examination or audit by any taxing authority). The Indemnified Party shall not make any settlement which would give rise to liability on the part of the Indemnifying Party without the written consent of the Indemnifying Party (which consent shall not be unreasonably withheld). The Indemnifying Party shall obtain the written consent of the Indemnified Party (which consent shall not be unreasonably withheld), before entering into any settlement or consenting to the entry of any judgment which does not include as an unconditional term thereof a release of the Indemnified Party from all liability in respect thereof.

Mallinckrodt, prior to the sale of the stock, marketed some very profitable products using a radioactive chemical known as PYP. DuPont filed suit in the United States District Court for the Southern District of Ohio, charging patent infringement. At the time of closing the case had been tried and submitted but not decided. The lawsuit was listed by Avon in a disclosure schedule of known contingent liabilities, attached to the agreement. On January 30, 1987 the court issued its decree sustaining the DuPont patents but finding that some of Mallinckrodt's major products did not infringe.

DuPont took an appeal to the United States Court of Appeals for the Federal Circuit and Mallinckrodt cross appealed. There were some settlement discussions while the case was on appeal but these were abandoned and the appeal was argued and submitted. The decision of the court of appeals, handed down October 8, 1987 and reported, *E.I. DuPont De Nemours & Company v. Mallinckrodt, Inc.*, 833 F.2d 1022, was a disaster for Mallinckrodt, adjudging much more extensive infringement than did the district court and determining that some of the infringements were willful, with the potential for treble damages and attorneys fees. Mallinckrodt, furthermore, could not continue production without a license from DuPont and faced an immediate injunction. Mallinckrodt proposed to settle the case for $32,000,000 plus a 25% royalty on future sales, and sought Avon's consent. This consent was forthcoming, following extensive discussion, in the form of a letter dated December 23, 1987, from W. Thomas Knight, Avon's Vice President and General Counsel, to Kenneth J. Burns, Vice President and General Counsel of IMC, reading as follows:

This letter will confirm my conversation with you earlier today. As you know, Du Pont has offered to settle its patent litigation with Mallinckrodt concerning PYP in return for a payment by Mallinckrodt of $32 million, together with a royalty of 25% on future sales. Under Avon's agreement with IMC relating to the purchase of Mallinckrodt, you have asked for our consent to your payment of the settlement.

We believe that the amount of this settlement is high and is based in part on Mallinckrodt's understandable desire to reach a settlement now to continue with future sales. Nevertheless, to allow Mallinckrodt to settle now, we hereby consent to that settlement. (We assume that normal and appropriate conditions will be included in the settlement documents including unconditional releases by Du Pont of Mallinckrodt, IMC, and Avon). We reserve as among Avon, Mallinckrodt and IMC the appropriate allocation of any amounts paid under the settlement. In this regard, however, as you know, we consider your offer of $10 million toward your portion of the past damages as insufficient.

We conceive of no reason why the giving of this consent did not suffice to obligate Avon to indemnify IMC in accordance with the terms of their contract, after the settlement proceeds were paid. The summary judgment on the issue of liability, then, was correct. We do not agree with Avon's contrary arguments, which we now treat in detail.

■ We agree with Avon that the trial court's judgment was, to all intents and purposes, a declaratory judgment of liability. Avon argues that the trial court erred in doing so, suggesting that a declaratory judgment is not proper when there is an adequate remedy at law. It cites *Glueck Realty Co. v. City of St. Louis*, 318 S.W.2d 206 (Mo.1958), and *Harris v. State Bank and Trust Co. of Wellston*, 484 S.W.2d 177, 178 (Mo.1972), neither of which goes beyond holding that the respective trial courts did not err in declining to proceed with a declaratory judgment action inasmuch as other adequate remedies were available. The discretion in determining whether to enter a declaratory judgment belongs to the trial court. We will reverse on procedural grounds only for abuse of discretion, which we do not find here. One circumstance supporting declaratory relief, as has been pointed out, is that the total indemnification alleged to be owing under

the contract could not be fully determined at the time the action was filed or at the time the judgment was entered because continuing royalties were being paid. The trial court acted within its discretion in entering the judgment appealed from.

The contract provides that New York substantive law governs. The parties appear to have combed the digests for statements of New York law, but have directed us to no authority that is very close to this case. Our examination of the cases cited and other New York authorities persuades us that the case involves general principles of contract law, on which most common law jurisdictions are in substantial agreement.

Avon properly argues that summary judgment is not proper on any issue in which there are material questions of fact. But the defendant is entitled to a trial only of issues of fact that are material. Nor is it sufficient to rely on the pleadings where uncontradicted matters are established by affidavits, authenticated documents, or depositions. We find that the factual issues suggested by Avon are substantially foreclosed by its consent to the settlement.

■ It is argued that the judgment of liability is in error because plaintiffs are entitled to indemnification only if they can prove more than $5,000,000 of damages. The contract so provides, but the possibility that the recovery may not exceed $5,000,000 can be taken care of by instructions at the trial of the damages issues, or in the judgment entered. The court can give effect to the deductible amount and any other contract provisions bearing on the issue of recovery. It is not necessary to hold up the entry of summary judgment of liability. Avon's consent to the settlement does not constitute an admission that more than $5,000,000 in damages is due.

It is next argued that genuine factual issues are presented as to whether the plaintiffs failed to perform conditions precedent, in that they "misrepresented and concealed from Avon crucial information ..." about the patent case.[5] Avon suggests that the contract language should be construed as imposing such a condition precedent and that, if the language does not readily yield this construction, parol evidence should be received as to the intent of the parties. The contract language does not speak in terms of conditions precedent regarding the disclosure of information, but rather in terms of "all such assistance and cooperation *as shall reasonably be requested...*" (Emphasis supplied). The contract contains a listing of conditions precedent to Avon's liability, but does not mention disclosure of information. This distinguishes *Merritt Hill Vineyard, Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 472 N.Y.S.2d 592, 460 N.E.2d 1077 (1984), and *TBS Enterprises, Inc. v. Dime Savings Bank of New York*, 55 A.D.2d 910, 390 N.Y.S.2d 581, *affirmed* 45 N.Y.2d 859, 410 N.Y.S.2d 291, 382 N.E.2d 1154 (1977), which involved explicit conditions precedent.

The undisputed and uncontrovertible evidence shows that Avon had listed the patent case in its schedule of known contingent liabilities annexed to the contract and expressly consented to the settlement on the terms tendered by DuPont in its "bottom line offer."[6] The initial consideration was paid and Mallinckrodt procured DuPont's effective release of Avon. This consented settlement triggered the indemnity clause, and operated to waive or to excuse any conditions precedent to Avon's promise of indemnity. The attempted reservations in the letter of consent relate only to allocation of the loss among the parties. Issues of this kind may be tried at the damage phase. The plaintiffs were justified in making settlement in reliance on the consent.

---

**5.** It is doubtful that the allegations of the answer are sufficient to plead fraud under *Rule 55.15.*

**6.** This serves to distinguish *Westbury Small Business Corporation v. Ballarine*, 128 Misc.2d 469, 489 N.Y.S.2d 815, *affirmed* 125 A.D.2d 462,

509 N.Y.S.2d 569 (1986), in which the contract could have been induced by fraudulent representation. Here Avon, knowing of the patent suit, was trying to attract purchasers for Mallinckrodt's stock.

The case of *Holiday Inns, Inc. v. Thirteen–Fifty Investment Co.*, 714 S.W.2d 597 (Mo.App.1986), is cited by Avon as bearing on the relationship between indemnitor and indemnitee. There the lessee-operator of a motel was sued for personal injuries claimed to be caused by defects in the construction of the swimming pool. The lessor had agreed to indemnify the lessee for claims on account of defective construction, but the plaintiffs (husband and wife) allowed the statute of limitations to run against the lessor. The claimant and the lessee then entered into an agreement by which the lessee paid $990,000 to the plaintiffs, and the plaintiffs agreed to look only to the proceeds of any recovery by the lessee against the lessor for the satisfaction of such judgment as the plaintiffs might subsequently obtain against the lessee. The lessee then admitted liability to the plaintiffs and did not seriously oppose the claim for $14,000,000 total damages. The court criticized the indemnitee's collusion with the plaintiffs, to the disadvantage of the indemnitor. The distinguishing feature, however, is that the indemnitee sought indemnity in an amount exceeding its liability. Here Mallinckrodt paid the settlement amounts with Avon's consent and now seeks indemnity only for what it undertook to pay.

Avon finally accuses the plaintiffs of "failing to protect Avon's interests while controlling the defense of the patent case...." It is alleged that they failed to settle the case on favorable terms and misrepresented or concealed information about the exposure. These arguments do not defeat the obligation to indemnify. They suggest at most a violation of the duty to mitigate damages, which is also an appropriate issue for trial at which damages are determined. There is no occasion to comment further about the legal and factual issues which may be presented in subsequent proceedings. It is sufficient for present purposes to say that none of the arguments presented is legally sufficient to avoid the indemnity agreement, once there has been consent to settlement.

The judgment determining liability is affirmed and the case is remanded for further proceedings in the trial court as contemplated by the judgment appealed from.

ROBERTSON, C.J., RENDLEN, HOLSTEIN, BENTON, JJ., and HIGGINS, Senior Judge, concur.

COVINGTON, J., dissents and files an opinion.

THOMAS, J., not participating because not a member of the Court when case was submitted.

COVINGTON, Judge, dissenting.

I hereby withdraw my concurrence in the principal opinion and enter my dissent.

The principal opinion holds that the appeal is permitted because of the trial court's certification pursuant to *Rule 74.-01(b)*. I respectfully disagree, finding no reason to depart from traditional concepts of appealability. The question of whether to permit interlocutory appeals is not one of first impression. Missouri has historically permitted appeals only from final judgments.

The Court first states that *Rule 74.01(b)* "does not borrow substantially from the federal model" that is, *Fed.R.Civ.P.* 54(b). Comparison of the rules, however, reveals that the sole differences in them relate to the method by which a judgment is entered. Otherwise the rules are identical in determination of when a court may certify a case for appeal and the basis for certification, as well as in the requirement that a "claim" be adjudicated. The federal authorities, therefore, are sound precedent for the court of appeals' conclusion that a trial judge cannot enter an appealable judgment that determines only the issue of liability, leaving the question of damages for future determination. *See, e.g., Acha v. Beame*, 570 F.2d 57, 61–63 (2d Cir.1978); *General Television Arts v. Southern Railway*, 725 F.2d 1327, 1331 (11th Cir.1984); *Kaszuk v. Bakers & Confectioneries Union*, 791 F.2d 548, 553 (7th Cir.1986); *Rudd Construction Equipment Co., Inc., v. Home Ins. Co.*, 711 F.2d 54, 56 (6th Cir. 1983); *see, e.g., Liberty Mutual Ins. Co., v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47

L.Ed.2d 435 (1976); *Petrol Corp., v. Petroleum Heat & Power Co.*, 162 F.2d 327, 329 (2d Cir.1947); *National Corn Growers Ass'n, Inc. v. Bergland*, 611 F.2d 730, 732–733 (8th Cir.1980). The principal opinion offers no persuasive rationale to reject these authorities.

The majority cites previous opinions of this Court purporting to support its conclusion that "a determination of liability is a matter that can be the subject of an independent judgment." The cases cited, however, fail to elucidate any standard that can be applied in making the independent judgment. The majority appears to limit the determination to declaratory judgment actions, but the trial court explicitly dismissed the portions of the prayers seeking declaratory relief. What differentiates this case from any other where liability is at issue is not perceptible. The Court appears to leave the question of the appealability of an issue to the trial court, specifically declining to provide guidance as to when and in what manner this newly-vested authority should be exercised.

The Court contends its decision "is fortified by *Rule 74.04(c)*, which authorizes the entry of summary judgment on issues of liability, leaving questions of damage for future determination." I respectfully disagree, reading the rule to say that determinations of liability are interlocutory in nature and, therefore, not appealable. In Missouri a final judgment is one that disposes of all claims against all parties. If damages have not been ascertained, no separate claim has been adjudicated.

Finally, whether a matter is appealable is a decision reserved to the legislature. Mo. Const. art. V, § 5, specifically prohibits this Court from adopting any rule affecting the "right of appeal." To meet these mandates *Rule 74.01(b)* must be read to require that an entire claim is to be adjudicated. The principal opinion's interjection of interlocutory appeals constitutes a practice contrary to statute and the constitution. For these reasons, I respectfully dissent.