**T.Q.L., by his next friend, M.M.A. and M.M.A. individually, Appellants,**

v.

**L.L., Respondent.**

**No. SD 29293.**

Missouri Court of Appeals,
Southern District,
Division One.

June 23, 2009.

---

Jack Cochran, Blue Springs, Jay P. Cummings, Gannaway & Cummings, Springfield, Edward D. Robertson, Jr., Mary Doerhoff Winter, and Anthony L. DeWitt, Bartimus, Frickleton, Robertson & Gorney, P.C., Jefferson City, for Appellant.

Richard L. Schnake & Thom G. Field, Neale & Newman, L.L.P., Springfield, for Respondent.

Linda K. Thomas, Springfield, for Guardian Ad Litem.

ROBERT S. BARNEY, Judge.

Appellant M.M.A. ("Father"), individually and as next friend of T.Q.L. ("Child"), appeals from a judgment entered by the trial court on August 27, 2008, which sustained a motion to dismiss his paternity cause of action and denied his request to file a second amended petition. He also seeks to appeal from a September 2, 2008, purported judgment which set aside a previously entered "First Amended Interim Judgment Finding Paternity, And Order Restricting Travel" ("the First Amended Interim Judgment"), dated July 18, 2007, which found, *inter alia,* paternity in Father and reaffirmed its prior order for the parties to submit to blood test for the purpose of paternity testing. He now raises four points of trial court error.

The record reveals Child was born on July 29, 2003, to L.L. ("Mother").[1] Prior to 2003, Mother and Father had been in an ongoing romantic relationship. During Mother's pregnancy, the parties entered into an "Agreement" relating to Mother's pregnancy and the birth of Child wherein Father agreed to provide certain ongoing support for Child throughout his life; to provide portions of Mother's prenatal medical care; and to provide Mother with other remuneration.[2] This Agreement, however, was apparently silent as to the issues of custody and visitation.

On January 11, 2007, Father filed a "Petition for Declaration of Paternity, Custody and Visitation." On May 15, 2007, Father filed a "Motion for Interim Order Finding Paternity on the Part of [Father] and Preventing Removal of [Child] from a Distance Greater than 50 miles from Greene County, Missouri." In its June 5, 2007, "Judgment Finding Paternity and Order Restricting Travel," the trial court declared Father was "the biological father of [Child];" ordered Child's name be changed to include Father's last name in addition to Mother's last name; and further ordered that neither party could travel with Child without the approval of the other party. This judgment made no determination relative to custody, visitation or support of the Child nor did it contain a parenting plan. Thereafter, on July 18, 2007, the trial court entered a First Amended Interim Judgment which reiterated the terms of its prior judgment and corrected a misspelling of Child's name.

Father then filed his "First Amended Petition for Declaration of Paternity, Custody and Visitation" ("the First Amended Petition") on November 29, 2007. In addition to the requests stated in the original petition relating to paternity, support, custody and visitation, this petition also included a request that the trial court find

1. There are no transcripts of any of the proceedings below. Accordingly, the bare facts recited in this opinion are taken from the legal file and the relevant sworn pleadings of the parties. Where the parties agree in their briefs on certain facts we shall treat those facts as admitted as true. *See McDonald v. Thompson,* 35 S.W.3d 906, 909–10 (Mo.App. 2001) (holding that "where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record").

2. Father contended in his pleadings that since the time of Mother's pregnancy he had provided her with in excess of $600,000.00 on behalf of Child; that he established a college savings account for Child; that he made Child beneficiary of a Trust he established; and that he purchased life insurance for Child's benefit with Mother as the named beneficiary. Father further asserted he had cared for Child's daily needs; had seen Child on an almost daily basis since Child's birth; and had taken Child and Mother on vacations in the recent past.

Further, the Agreement stated Mother "neither asserts nor denies that [Father] is the father of [Child], and [Father] neither admits nor denies that he is the father" of Child.

the Agreement entered into by the parties prior to Child's birth be declared void because Mother had recently informed Father that "he is not the biological father of [Child] or alternatively, that there is a strong likelihood that he is not the biological father of [Child.]"

In her "Answer to First Amended Petition ..." Mother requested DNA testing to determine Child's paternity. After much legal wrangling and objections by Father, on March 10, 2008, the trial court entered an "Order for Testing Pursuant to the Uniform Parentage Act." Additionally, the trial court appointed a Guardian ad Litem ("the GAL") on Child's behalf. Thereafter, based on motions and argument, the trial court entered a docket entry order on April 22, 2008, which set out that Father "shall immediately comply with prior court order for DNA testing."[3]

On April 29, 2008, Father then filed a motion asking the trial court to set aside the order requiring DNA testing. On May 22, 2008, Mother filed her "Motion to Set Aside First Amended Interim Judgment." On May 27, 2008, in a docket entry, the trial court ordered that the First Amended Interim Judgment "be set aside...."

On June 16, 2008, Father filed his "Motion for Leave to Amend [the] First Amended Petition for Declaration of Paternity, Custody." In this motion, Father sought to raise "alternative theories of custody" based on the fact that Mother had led Father to believe Child was his biological son since the time of her pregnancy and if Father was not allowed to be part of Child's life the result would "obviously [be] extremely detrimental to the best interests of [Child]." In this motion Father also questioned Mother's parental fitness.

On July 1, 2008, the GAL filed a "Motion to Dismiss Father's Petition for Declaration of Paternity." This motion, which quoted section 210.834.4,[4] asserted that because Father was determined not to be Child's biological father, then "'the court shall dismiss the action as to that party....'" On July 28, 2008, the trial court denied Father's motion for leave to file a second amended petition and sustained the GAL's motion to dismiss Father's paternity action. Father now seeks to appeal from the trial court's judgment of dismissal entered on August 27, 2008, as well as from the trial court's purported judgment entered on September 2, 2008.

Father raises four points of trial court error. In his first point, he maintains the trial court erred in setting aside the First Amended Interim Judgment because Mother's May 22, 2008, "Motion to Set Aside First Amended Interim Judgment" failed to comply with various Missouri Court Rules. Father's second point asserts the trial court erred in ordering DNA testing because the First Amended Interim Judgment "for which the time to appeal had run, was final and conclusive as to the issue of paternity in that it was a matter determined on the merits ... and never appealed." In his third point, Father maintains the trial court erred in setting aside the First Amended Interim Judgment because he was denied "the opportunity to be heard on issues related to the order setting aside the original judgment of paternity ..." in contravention of his constitutional rights. In Father's

---

**3.** The DNA tests proved Father was not the biological father of Child.

**4.** Section 210.834.4 states that "[w]henever the court finds that the results of the blood tests show that a person presumed or alleged to be the father of the child is not the father of such child, such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to that party...."

All statutory references are to RSMo 2000.

fourth point he asserts the trial court erred in granting the GAL's motion to dismiss and in failing to allow him to file his second amended petition.

■ Turning to Father's points of trial court error, we note at the outset that three of his four points relied on and their attendant arguments presuppose the trial court's First Amended Interim Judgment was a final judgment which was subject to appeal by Mother and was not modifiable by the trial court once it was entered. However, we determine that the First Amended Interim Judgment was merely an order of the trial court and not a final judgment. Our determination affects the entirety of this appeal.

Here, Father's "Petition for Declaration of Paternity, Custody and Visitation" was a two count petition requesting a determination that Child was Father's biological son; that a finding be made as to custody and visitation; that a support order be issued; and that Child's name and birth certificate be changed to reflect Father's paternity. Father then filed a "Motion for Interim Order Finding Paternity on the Part of [Father] and Preventing Removal of [Child] . . .," on May 15, 2007, which requested a paternity determination and an order preventing either party from removing Child from the area without the permission of the other party.

Thereafter, on June 5, 2007, the trial court entered its "Judgment Finding Paternity and Order Restricting Travel." In this judgment the trial court found there was "no just reason for delay in entering its [j]udgment as to paternity;" declared Father was "the biological father of [Child];" ordered Child's name be changed to include Father's last name in addition to Mother's last name; and further ordered that neither party be permitted "to travel with [Child] for a distance greater than 50 miles [without permission of the other party] . . . until a . . . parenting plan [was] implemented. . . ." Later, on July 18, 2007, the trial court entered its First Amended Interim Judgment which reiterated the terms of the June 5, 2007, judgment and corrected a misspelling of Child's name.

In our analysis, we initially observe that both of these judgments suffer from the same malady: they do not dispose of the *entirety* of Father's original two-count petition. Rule 74.01(b)[5] sets out that:

> [w]hen more than one claim for relief is presented in an action . . . the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

While it is clear that the trial court specifically set out "there is no just reason for delay in entering" the First Amended Interim Judgment, our analysis does not end there. As explained by the Supreme Court of Missouri:

> Rule 74.01(b) provides an exception to th[e] 'finality rule' for cases with multiple claims. A trial court may enter judgment on less than all claims and certify that there is 'no just reason for delay.' The designation by a trial court that its order is final and appealable is not conclusive. It is the content, sub-

---

**5.** All rule references are to Missouri Court Rules (2007).

stance, and effect of the order that determines finality and appealability.

Although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct 'judicial unit.' The required 'judicial unit for an appeal' has a settled meaning: 'the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim.'

*Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997) (internal citations omitted). Thus, the issue in the present matter is whether the trial court's finality certification of the First Amended Interim Judgment was effective to make it a final judgment such that it "dispose[d] of a distinct 'judicial unit.'" *Id.*

There are at least two cases in which Missouri courts have found paternity cases were subject to a Rule 74.01(b) certification of finality, *Landoll by Landoll v. Dovell,* 752 S.W.2d 323 (Mo. banc 1988), and *Int'l Minerals & Chem. Corp. v. Avon Prod., Inc.,* 817 S.W.2d 903 (Mo. banc 1991). Both of these cases have limited precedential value.

In *Landoll,* 752 S.W.2d at 324, the mother brought a petition seeking a paternity declaration against the father; "enforcement of a contract allegedly entered into between [the mother] and [the father] for the provision of child support for [the child;] and for an order of temporary support *pendente lite.*" The mother then filed a motion for summary judgment on the paternity issue based on blood tests submitted by the parties. *Id.* "[T]he trial court sustained the [mother's] summary judgment motion on the issue of paternity and ordered [the father] to pay $1,200 per

month child support *pendente lite.*" *Id.* The trial court's order contained no designation that the order was final for purposes of appeal. *Id.* On appeal by the father, the mother "filed a motion to dismiss [the father's] appeal, claiming that the trial court's order of support was not a final appealable order." *Id.* The father also filed a four count writ of prohibition which sought to "prohibit the trial court from exercising jurisdiction on the grounds . . ." that, *inter alia,* "the trial court lacked the authority to enter an order for child support *pendente lite* in a paternity action." *Landoll,* 752 S.W.2d at 324.

The Supreme Court of Missouri determined the father's assertion in his writ was dispositive as to both actions; it determined trial courts are "without authority to enter a child support order *pendente lite* in a paternity action;" it made its preliminary ruling absolute; and it dismissed the appeal as moot. *Id.* at 325. In addition to those primary rulings, the court also discussed the idea raised by the mother that the order entered by the trial court was not a final judgment. *Id.* at 326. The court wrote:

> [w]e are not unaware of the hardship which this ruling may place on children during the pendency of paternity actions. Yet, in cases like this in which related issues remain unresolved after the trial court has decided the paternity issue against the putative father, our rules provide a method by which the trial court may declare its ruling final and thus appealable.

*Id.* The court then recited Rule 74.01. *Id.* It thereafter stated:

> In *Speck v. Union [Elec.] Co.,* 731 S.W.2d 16, 20 (Mo. banc 1987), this Court considered Rule 81.06 (repealed),[6

> [w]hen a separate trial of any claim, coun-

6. Rule 81.06 provided:

[1] the predecessor to Rule 74.01(b), and reaffirmed *Spires v. Edgar*, 513 S.W.2d 372 (Mo. banc 1974) and *Dotson v. E.W. Bacharach, Inc.*, 325 S.W.2d 737 (Mo. 1959). We held that the trial court has discretion to determine whether to designate its judgment as final. Rule 74.01(b) vests the same discretion in our trial courts and permits appeals to proceed in due course upon 'an express determination that there is no just reason for delay.' Judicious employment of Rule 74.01(b) may help alleviate the hardship inherent in matters relating to child support in paternity actions.

*Landoll*, 752 S.W.2d at 326.

The problem with the court's holding in *Landoll* is due, in part, to its reliance on *Speck*, 731 S.W.2d at 20. In *Speck*, 731 S.W.2d at 16, the trial court designated its judgment dismissing the case against one of several defendants as final for purposes of appeal under former Rule 81.06. The court of appeals found that a judgment terminating the case as to only one party could not be appealable such that it dismissed the appeal. *Id.* at 17. The Supreme Court then accepted transfer of the case and found that in the context of "the overall complexity of the litigation" the convenience of permitting an immediate appeal was apparent because it is important to know which defendants will remain in the case. *Id.* at 22. Our high court then upheld the discretion of the trial court in its designation of finality under the procedural rule then in force. *Id.*

■ *Speck* involved a motion to dismiss which was granted by the trial court and which completely settled the claims as to one defendant. That is not at all similar to the present matter. Second, *Speck* was specifically overruled by the Supreme Court in *Gibson*, 952 S.W.2d at 244,[7] one of the most recent pronouncements from Missouri's high court on the application of Rule 74.01(b). " 'This court is constitutionally bound to follow the most recent con-

terclaim or third-party claim is ordered in any case and a jury trial thereof is had, the separate judgment entered upon the verdict therein shall be deemed a final judgment for the purposes of appeal within the meaning of [s]ection 512.020. . . . When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of [s]ection 512.020 . . . unless specifically so designated by the court in the judgment entered. However, when a separate trial is had before the court without a jury of an entirely separate and independent claim unrelated to any other claims stated or joined in the case, then the judgment entered shall be deemed a final judgment for purposes of appeal within the meaning of [s]ection 512.020 . . . unless the court orders it entered as an interlocutory judgment to be held in abeyance until other claims, counterclaims, or third-party claims are determined. In any

case (jury or nonjury) when a separate final judgment is entered the court may stay its enforcement until other or all final judgments in the cause are entered and may prescribe such conditions as are necessary to secure and protect the relative rights of all parties; provided, however, any such stay shall not affect the right of appeal.

**7.** In overruling *Speck*, the *Gibson* court, 952 S.W.2d at 244, stated:

[t]rue, this Court once stated that the court of appeals' decisions cited in the preceding paragraphs should no longer be followed. *Speck* [,731 S.W.2d at 20 n. 2]. However, this Court more recently called these cases 'well-reasoned decisions.' *[Comm. for Educ. Equal.] v. State*, 878 S.W.2d [446,] 454 [ (Mo. banc 1994) ]. Footnote 2 in *Speck* is, in fact, the authority that should not be followed, because, the very year *Speck* was decided, this Court adopted Rule 74.01(b) and repealed Rule 81.06 (that *Speck* had applied)—with the result that *Speck* was 'rethought,' *id.*, and the cases cited in this opinion are again good law.

trolling decision of the Missouri Supreme Court.'" *Indep.–Nat. Educ. Ass'n v. Indep. Sch. Dist.*, 162 S.W.3d 18, 21 (Mo.App. 2005) (quoting *Kinder v. Missouri Dep't of Corr.*, 43 S.W.3d 369, 374 (Mo.App.2001)). Third, *Speck* is also based on the application of Rule 81.06, the predecessor to current Rule 74.01(b), and that rule differs substantially from the rule at issue in the present matter.

Additionally, the *Landoll* discussion relating to Rule 74.01(b) appears to this Court to be dicta "in that it was not essential to the … Supreme Court's decision" that a trial court does not have authority to enter a child support *pendente lite* in a paternity action. *Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 132 (Mo.App.2006). " 'Statements are obiter dicta if they are not essential to the court's decision of the issue before it.' The Missouri Supreme Court's dicta are not binding" on this Court. *Id.* (quoting *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 59 (Mo.App.2002)). *Landoll's* application to the present matter is tenuous at best.

The other case which referred to paternity issues being subject to Rule 74.01(b) application is *Int'l Minerals*, 817 S.W.2d at 904, a declaratory judgment indemnity suit related to a $675,000,000.00 purchase of stock, which relied in part on *Landoll.* One of the issues in *Int'l Minerals* regarded a grant of partial summary judgment as to liability by the trial court which also found "pursuant to Rule 74.01(b), that there was no just reason for delay in entering judgment on this claim…." *Id.* An appeal followed and "[t]he Court of Appeals, Eastern District, dismissed the appeal, finding that the trial court lacked the authority to enter an appealable judgment." *Id.* In dismissing the matter, the court of appeals reasoned that "a judgment of this kind, adjudging liability only and not ruling the issue of damages, could not constitute a final and appealable judgment because, by leaving damages for future determination, it did not finally determine any discrete segment of the case." *Id.* Transfer was then granted to the Supreme Court of Missouri "to consider the scope of Rule 74.01(b)…." *Id.* In its review of cases relating to this issue, the court referenced *Landoll* and stated:

> [i]n *Landoll* …, the trial court had entered a judgment determining paternity, and also assessed support *pendente lite.* Our specific holding was that this latter order was not authorized in a paternity action, because, for want of statutory basis, support in a paternity action could only be awarded by a final judgment. We suggested that Rule 74.01(b) provided an appropriate vehicle for appealing a judgment declaring paternity prior to the resolution of monetary issues, if the trial judge makes the appropriate determination. The determination of paternity is a matter which could be the subject of a separate judgment, and so could be the subject of a 74.01(b) appeal.

*Int'l Minerals*, 817 S.W.2d at 905–06. The *Int'l Minerals* court ultimately concluded that "a determination of liability is a matter that can be the subject of an independent judgment. The trial court's judgment, however labeled, is essentially a declaratory judgment determining liability. This is an appropriate judgment capable of standing alone." *Id.* at 906. Accordingly, the appeal was appropriately before the court. *Id.*

However, *Int'l Minerals* suffers from some of the same deficiencies as *Landoll.* First, in *Comm. for Educ. Equal.*, 878 S.W.2d at 448–49, an action involving the constitutionality of school funding and property tax valuations, the Supreme Court of Missouri revisited the

concepts espoused in *Int'l Minerals*. The court found *Int'l Minerals*

> while reaching the correct result, went too far in some respects. It states there is 'no substantial distinction between Rule 74.01(b) and former Rule 81.06.' It also states, 'Rule 74.01(b) does not borrow substantially from F.R.C.P. 54(b).' No fair reading of the three rules supports those statements. Plainly, Rule 74.01(b) and F.R.C.P. 54(b) are essentially identical, while former Rule 81.06 does not even approach the wording of the other two rules. Specifically, former Rule 81.06 has no requirement that the judgment dispose of at least one claim for relief as to one party as a precondition to the exercise of discretion to determine 'no just reason for delay' of the appeal. To hold that Rule 74.01(b) and former Rule 81.06 are the same renders meaningless the requirement that the order dispose of one claim. To the extent that *[Int'l] Minerals* might be read to remove the requirement that the judgment dispose of one claim as to one party, it should not be followed. A judgment is not final merely because it could, in a hypothetical case, be final if it does not, in the case under consideration, *dispose of one claim for relief as to any party.*

*Id.* at 452–53 (internal citations omitted) (emphasis added). Second, as with *Landoll* above, we must follow the pronouncement found in *Comm. for Educ. Equal.* over that found in *Int'l Minerals* because this Court is bound by the most recent Supreme Court decisions. *Indep.–Nat. Educ. Ass'n,* 162 S.W.3d at 21. In other words, a "judgment which resolves fewer than all legal issues as to any single 'claim for relief' is not final notwithstanding the trial judge's designation as such." *Comm. For Educ. Equal.,* 878 S.W.2d at 450. "Similarly, a judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment under Rule 74.01(b)." *Id.*

Neither *Landoll* nor *Int'l Minerals* should be relied on by this Court in examining the applicability of Rule 74.01(b) to the First Amended Interim Judgment. This Court must, instead, be guided by the Supreme Court of Missouri's more recent cases of *Gibson* and *Comm. for Educ. Equal.* in its determination regarding the finality of the First Amended Interim Judgment.

█ As previously related, a trial court's designation of an order as a judgment is not conclusive with respect to its finality. *Gibson,* 952 S.W.2d at 244. "It is the content, substance, and effect of the order that determines finality and appealability." *Id.* Here, the First Amended Interim Judgment, as well as its June 5, 2007, predecessor judgment, determined paternity and limited the parties' travel with Child as requested in Father's May 15, 2007, motion. Neither instrument determined custody, child support, or visitation as requested in Father's petition for paternity. In the present matter, the finding of paternity and travel restrictions cannot be considered a distinct judicial unit, because the paternity finding is inextricably intertwined with issues of custody and support. *See id.* The First Amended Interim Judgment and its predecessor judgment of June 5, 2007, simply failed to resolve all legal issues as to any single "claim for relief." *Comm. For Educ. Equal.,* 878 S.W.2d at 450–51. As such, the First Amended Interim Judgment should not be considered final for purposes of appeal despite the trial court's finding to the contrary. *See Dreppard v. Dreppard,* 211 S.W.3d 620, 622 (Mo.App.2007); Rule 74.01(b).

Further, it is not lost on this Court that the trial court referred to its June 5, 2007, judgment as an interim judgment in its docket entry. It then titled its July 18, 2007, judgment as the First Amended *Interim* Judgment. We therefore find that the First Amended Interim Judgment is not, in fact, a final judgment. It is merely an order of the trial court. As a general rule an order of the trial court is subject to change at any time prior to the entry of a final judgment. *See Ward v. Hentges*, 844 S.W.2d 471, 472 (Mo.App.1992).

With that being said, Father's first three points relied on are directed at the fact that the trial court set aside the First Amended Interim Judgment. As already determined, the First Amended Interim Judgment and the June 5, 2007, judgment were not appealable final judgments but merely orders of the trial court. The trial court was well within its right to set those orders aside for good cause based on a party's motion. Accordingly, we cannot and shall not address Father's first three points relied on. Points I, II, and III are denied.

Before discussion of Father's fourth and final point, we are compelled to discuss the September 2, 2008, purported judgment due to Mother's motion to dismiss Father's appeal.

It is our view that the September 2, 2008, judgment is a nullity. This is because the August 27, 2008, judgment resolved all issues in this case by dismissing the entire matter. "A judgment is final when it disposes of all the issues with regard to all of the parties in the case and leaves nothing for future determination." *Johnston v. 411744 A.H. Tannery, Inc.*, 262 S.W.3d 705, 707–08 (Mo.App.2008).

Furthermore, under Rule 75.01 the trial court has control over its judgment for a period of thirty days and has the power to "vacate, reopen, correct, amend, or modify its judgment within that time." In the instant matter, the trial court did none of those things in its September 2, 2008, purported judgment. Consequently, this purported judgment has no effect.

■ Father's fourth and final point takes issue with the trial court's grant of the GAL's motion to dismiss his paternity action and the trial court's failure to permit him to file a second amended petition which "set forth a claim for relief under the doctrine of equitable estoppel in that he had pleaded all the elements and the best interests of [Child] in continuing the only father-son relationship [Child] had ever known were not properly weighed or considered." [8]

■ Leave to amend a petition is governed by Rule 55.33(a). Rule 55.33(a) mandates that a "pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "It is within the trial court's broad discretion to allow amendment of the pleadings at any stage in the proceed-

---

**8.** A copy of Father's proposed "Second Amended Petition for Declaration of Paternity, Custody and Visitation" ("the Second Amended Petition") was apparently provided to the trial court and was included in the legal file filed with this Court. Mother argues this document is not file stamped or signed and was improperly included in the legal file such that this Court should not review or consider it. As there is no transcript of any of these proceedings, this Court has no proof one way or the other as to whether this motion was considered by the trial court. Further, Mother did not properly challenge the inclusion of this document in the legal file as required by Rule 81.15(d). In that the circuit court's certification covers the entire legal file, we shall defer to that certification and shall consider Father's Second Amended Petition for purposes of determining whether the amendment was properly denied.

ings." *Moynihan v. City of Manchester*, 203 S.W.3d 774, 776 (Mo.App.2006). "However, 'it is an abuse of discretion to not grant such leave when justice so requires.'" *Sloan–Odum v. Wilkerson*, 176 S.W.3d 723, 725 (Mo.App.2005) (quoting *Dwyer v. Meramec Venture Assoc., L.L.C.*, 75 S.W.3d 291, 292 n. 1 (Mo.App.2002)).

When considering allowing a party to amend a pleading, there are a number of factors which the trial court should consider, including:

1) hardship to the moving party if leave to amend is not granted; 2) reasons for failure to include any new matter in previous pleadings; 3) timeliness of the application; 4) whether an amendment could cure any defects of the moving party's pleading; and 5) injustice to the party opposing the motion.

*Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 751 (Mo.App.2005).

In this case, it is clear Father will suffer a hardship by the trial court's failure to grant him leave to amend his petition. Here, after rejecting the Second Amended Petition, the trial court dismissed the case as set out in the First Amended Petition, thus, Father was then without a remedy and this matter was foreclosed. Allowing the amendment to the pleadings would permit Father to have an opportunity to present his claims to the trial court. Further, Father was unable to earlier assert his arguments relating to equitable estoppel and equitable parenting prior to this time in that the DNA testing had only recently revealed that he was not the biological father of Child. Additionally, Father attempted to amend his pleadings in a timely manner after discovering this foregoing fact, and his amended pleading would serve to cure the deficiency pointed out in the GAL's motion to dismiss, which is that Father could no longer bring a statutory claim, at least not under the Uniform Parentage Act, because he was not, in fact, Child's biological father. Additionally, this Court sees no injustice to Mother in permitting the amendment to Father's pleading and determines its allowance would not be contrary to the best interest of Child. Accordingly, given the circumstances of this case, the trial court should have granted Father's request for leave to amend his petition. *Id.*; *see also Manzer v. Sanchez*, 985 S.W.2d 936, 939 (Mo.App.1999) (finding that a severe hardship exists where denial of leave to amend results in preclusion of cause of action).

Since the trial court erred in denying Father's motion to file his Second Amended Petition, the challenge to the trial court's grant of the GAL's motion to dismiss has been rendered moot. Point IV has merit.[9]

For the reasons stated herein, the trial court's judgment is reversed and remanded to the trial court. The trial court is hereby ordered to reinstate the case and allow Father to file his Second Amended Petition.

BATES, J., and SCOTT, P.J., concur.

---

**9.** Mother filed a "Motion to Dismiss Appeal for Lack of Appellate Jurisdiction" in this matter. The motion was taken with the case and is hereby denied.